988 A.2d 1239 (2010)
412 N.J. Super. 140
John PAFF, Plaintiff-Appellant/Cross-Respondent,
v.
DIVISION OF LAW, Defendant-Respondent/Cross-Appellant.
Docket No. A-3007-08T1
Superior Court of New Jersey, Appellate Division.
Argued January 19, 2010.
Decided March 5, 2010.
*1241 Richard Gutman argued the cause for appellant/cross-respondent.
Lewis A. Scheindlin, Assistant Attorney General, argued the cause for respondent/cross-appellant (Anne Milgram, Attorney General, attorney; Nancy Kaplen, Assistant Attorney General, of counsel; Mr. Scheindlin, on the briefs).
Before Judges BAXTER, ALVAREZ and COBURN.
The opinion of the court was delivered by
BAXTER, J.A.D.
This appeal requires us to determine the scope of the attorney-client privilege. In particular, we are called upon to decide whether unpublished Administrative Agency Advice (AAA) letters issued by the Division of Law (Division),[1] which interpret the statutes and regulations the Division's administrative agency clients are required to apply and enforce, are "government records" for purposes of the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and therefore available to the public. We answer that question in the negative because we are satisfied that the AAAs are a "record within the attorney-client privilege," N.J.S.A. 47:1A-1.1, and therefore not subject to public access under OPRA.
We reject plaintiff's contention that the AAAs themselves are not privileged and consequently the judge erred by denying his request for a list of the topics of all AAAs issued since 2002. Therefore, because plaintiff's only argument in support of his right to the subject matter list is the lack of any privilege, we affirm the judge's denial of plaintiff's request for the subject matter index.
In its cross-appeal, the Division challenges a portion of the judge's December 17, 2008 order that required it to provide a list of the date and docket number of each unpublished AAA, the agency requesting it and the attorney who prepared it. We agree with the Division that because the more limited index the judge ordered the Division to provide is derived solely from materials that are themselves privileged, the judge erred by ordering the Division to provide such a list. That being so, the judge's conclusion that plaintiff was a prevailing party entitled to counsel fees was in error. Moreover, the judge's orderwhich required the Division to provide plaintiff with a list that did not include the subject matter of the AAAsresulted in providing plaintiff with a document he did not want and could not use. Considering plaintiff a prevailing party was, under such circumstances, an erroneous conclusion. We thus reverse on the cross-appeal and remand for the entry of an order vacating both paragraph 2 of the December 17, 2008 order and the February 18, 2009 order that awarded plaintiff a $7,780 attorney's fee as a prevailing party.

I.
On April 22, 2008, plaintiff John Paff submitted both a common law and an OPRA request to the Division of Law for "a roster or listing that shows ... the date, author, the recipient and topic of all Agency Advice Letters [from] January 1, *1242 2002 through the current date." Before addressing the legal issues raised by this appeal, we pause to describe the function of AAAs. As we discuss later in this opinion, the Attorney General, acting through the Division of Law, is the "sole legal adviser" for all state agencies, boards and authorities, and is also responsible for "interpret[ing] all statutes and legal documents" for those clients. N.J.S.A. 52:17A-4(e). One of the methods by which the Division discharges that statutory responsibility is by issuing legal opinions, known as Administrative Agency Advice letters, whenever a State agency requests legal advice. New Jersey Department of Law and Public Safety, Division of Law Handbook (Handbook) 10-11 (Sept.2006).[2] As the Handbook explains, "[b]y providing sound legal opinions to our clients in a timely manner, we will assist our clients by avoiding unnecessary litigation or by prevailing in legal challenges to their actions or policies." Id. at 10.
The Handbook explains the difference between AAA Formal Opinions and the unpublished AAAs that are the subject of this appeal. The former have been deemed "so significant as to warrant broad circulation," which is "accomplished via a release to the press, distribution to public officials and county law libraries, and publication in the New Jersey Law Journal and New Jersey Lawyer." Id. at 13. However, unless an AAA is designated as a formal opinion and released to the press, "the opinion is a confidential document protected by the attorney-client privilege." Id. at 14. In such circumstances, "copies of the opinion should not be disseminated to any person or entity other than the requesting agency and members of the Division of Law staff except with the approval of AAG Bender." Ibid. Both unpublished and published AAAs are assigned a subject matter designation and docket number, and are stored on an electronic database that can be accessed on the Division's intranet by deputy attorneys general. Ibid. The Handbook reminds all users of the intranet that "it should be presumed that all opinions, except formal Attorney General opinions, are attorney-client privileged." Ibid.
Until 1966, the Division published its informal AAAs, but ceased that practice thereafter. Contained in plaintiff's appendix are examples of unpublished AAAs issued after 1966, and for which Division clients waived the attorney-client privilege by releasing the AAAs to the public or posting them on agency websites. Those informal AAAs for which the agency waived the privilege include opinions issued to the Department of Community Affairs (DCA) on whether corporations and partnerships bidding on public contracts are required to specify the names of each individual who holds more than a ten percent interest in the corporation or partnership; whether a contractor who provides goods and services to a local contracting unit or school district is required to provide the same proof of valid business registration issued by the Department of Revenue as are those who contract with State agencies; and whether local government units may utilize bank, travel and entertainment credit cards to purchase goods and services.
Similarly, the Election Law Enforcement Commission (ELEC) posted on its website fifty-two informal opinions issued to ELEC by the Division between 1998 and 2008 on a wide variety of topics, of which five such informal AAAs are contained in plaintiff's appendix. Those five address whether specified organizations are prohibited from making political contributions.
*1243 Last, plaintiff's appendix includes ten informal AAAs issued by the Division to DCA in 1991, which DCA has released to the public. All ten provide advice on whether various local officials were required to file the financial disclosure statements required by the then recently-enacted Local Government Ethics Law, N.J.S.A. 40A:9-22.6.
The number of published formal AAAs has declined dramatically between 1949 and 2008, the last year for which data is contained in the record. Published AAAs averaged sixty-two per year between 1949 and 1962, but dropped to an average of five per year between 1962 and 1973. Between 1973 and 1978, the number increased to an average of twenty-four per year before decreasing to an average of six per year between 1981 and 1986. Between 1986 and 2008, only twelve formal AAAs were issued, all prior to 1996. None have been issued since. In contrast, based on the docket numbers of which he is aware, plaintiff contends that approximately 200 informal AAAs are sought and issued each year.
In its response to plaintiff's OPRA request for a list of the topics of all informal AAAs issued since 2002, the Division initially stated that a list showing only the date and author might be discoverable under OPRA, but it needed additional time to consider the legal issue of whether such a list could be disclosed. However, before the Division completed its consideration of that first request, denominated request W35654, plaintiff submitted a second OPRA request, designated W36369, for "all indexes of Attorney General's memorandum opinions, informal opinions, administrative agency advice letters and/or any other Attorney General opinions other than formal opinions." Plaintiff explained that he was not requesting the Division to provide him with copies of the publicly-available indexes of the formal opinions issued by the Attorney General.
On June 5, 2008, the Division of Law's custodian of records notified plaintiff that both of his requests were denied on the basis of the confidentiality afforded by the attorney-client privilege. With regard to W35654, the first request, which sought a list from 2002 to the present of the date, author, recipient and topic of legal advice, the custodian explained that although the Division had initially offered to provide the dates and author of each opinion, "[u]pon further legal review, we have determined that the attorney-client privilege requires that any roster or listing of advice rendered to our clients be entirely confidential." At the same time, the custodian informed plaintiff that the Division also declined to provide the actual AAAs for the same reason, namely the attorney-client privilege.
Shortly thereafter, on July 17, 2008, plaintiff filed a complaint in the Law Division challenging the Division's denial of his OPRA requests.[3] The complaint sought, under OPRA and the common law, an order granting plaintiff access in unredacted form to all "Attorney General AAA and/or `Informal' opinion rosters/listings and indexes." Plaintiff did not seek copies of the actual AAAs. He sought only a list showing the topic, or subject matter, of each AAA. The Division sought dismissal of plaintiff's complaint.
The judge held that the attorney-client privilege protects the AAAs from disclosure. She also held that the same privilege prohibits access to a list of the topic or subject matter of AAAs, but that the attorney-client privilege did not preclude *1244 disclosure of the name of the author of each AAA, the date of issuance, the docket number and the client requesting and receiving the opinion. Consequently, by order of December 17, 2008, she directed the Division to provide plaintiff with such a list. Considering plaintiff to be a prevailing party under OPRA, the judge issued a supplemental order on February 18, 2009 awarding plaintiff $7,780 in attorney's fees.
On appeal, plaintiff contends that the December 17, 2008 order that denied his OPRA request for a list of the topics and subjects of all informal AAAs issued since 2002 constitutes reversible error because: 1) "[b]oth OPRA and the attorney-client privilege require that the privilege be narrowly interpreted and that the Division bear the burden of proof"; and 2) "[t]he attorney-client privilege does not apply to Executive Branch Secret Law."

II.
When reviewing a trial court's grant of summary judgment, this court applies the same standard the trial court applied. Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div), certif. denied, 154 N.J. 608, 713 A.2d 499 (1998). The legal conclusions of the trial court are reviewed de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995). Because the issues upon which this appeal is based, namely the applicability of the attorney-client privilege, are primarily legal, we review the Law Division's conclusions de novo.
Plaintiff argues that the subject matter list of the AAAs that he requested should have been disclosed because the AAAs themselves are not protected under the attorney-client privilege. The Division maintains that because the AAAs are protected from disclosure by the attorney-client privilege, it stands to reason that the subjects of the AAAs are protected legal advice that are likewise protected from disclosure.
The Open Public Records Act, under which plaintiff seeks relief, provides that:
government records shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest, and any limitations on the right of access accorded by P.L. 1963, c. 73 (C. 47:1A-1 et seq.) as amended and supplemented, shall be construed in favor of the public's right of access.
[N.J.S.A. 47:1A-1.]
However, OPRA expressly exempts from the definition of a government record "any record within the attorney-client privilege." N.J.S.A. 47:1A-1.1. Thus, if the AAAs are a "record within the attorney-client privilege," they are confidential documents and beyond OPRA's reach. Ibid.
The attorney-client privilege has been codified in New Jersey, by both statute and rule, the terms of which are identical. The statute and rule provide, in relevant part:
[C]ommunications between lawyer and his client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (a) to refuse to disclose any such communication, and (b) to prevent his lawyer from disclosing it, and (c) to prevent any other witness from disclosing such communication if it came to the knowledge of such witness (i) in the course of its transmittal between the client and the lawyer, or (ii) in a manner not reasonably to be anticipated, or (iii) as a result of a breach of the lawyer-client relationship, or (iv) in the course of a recognized confidential or privileged communication between the client and such witness. The privilege shall be claimed by the lawyer unless otherwise *1245 instructed by the client or his representative.
[N.J.S.A. 2A:84A-20(1); N.J.R.E. 504.]
The purpose of the attorney-client privilege is "`to encourage clients to make full disclosure to their attorneys.' The policy underlying this privilege is to promote full and free discussion between a client [and his] attorney.... [I]t is essential that a client be able to protect his discussions with his attorney from disclosure." Macey v. Rollins Envtl. Servs. (N.J.), Inc., 179 N.J.Super. 535, 539, 432 A.2d 960 (App.Div.1981) (quoting Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L. Ed.2d 39, 51 (1976)).
Despite the importance of the privilege, it should be construed strictly:
Since the recognition of the privileged communication between attorney and client rests in the suppression of the truth the privilege should be strictly construed in accordance with its object. The privilege is an anomaly and ought not to be extended. The rule of privilege, having a tendency to prevent the full disclosure of the truth, ought to be construed strictly.
[In re Selser, 15 N.J. 393, 405-06, 105 A.2d 395 (1954) (internal quotations and citations omitted).]
It is well-settled that there exists an attorney-client relationship between the Division and the state agencies to which it provides legal advice. This relationship is codified in N.J.S.A. 52:17A-4, which states that the Division shall
[a]ct as the sole legal adviser, attorney or counsel, notwithstanding the provisions of any other law, for all officers, departments, boards, bodies, commissions and instrumentalities of the State Government in all matters other than those requiring the performance of administrative functions entailing the enforcement, prosecution and hearing of issues as imposed by law upon them; and represent them in all proceedings or actions of any kind which may be brought for or against them in any court of this State; and shall likewise interpret all statutes and legal documents, inspect and approve contracts and titles and otherwise control their legal activities.
[N.J.S.A. 52:17A-4(e).]
Plaintiff argues that "when the Attorney General issues written opinions to government officials and agencies, she usually is not functioning as does a private attorney in an attorney-client relationship." Obviously, such a contention was squarely rejected by the Legislature when it enacted N.J.S.A. 52:17A-4. New Jersey courts have also rejected the position plaintiff has advanced, and have repeatedly held that the attorney-client privilege is fully applicable to communications between a state agency and its attorney. For example, in Payton v. New Jersey Turnpike Authority, 148 N.J. 524, 550-51, 691 A.2d 321 (1997), the Court held that a unit of State government, such as the Turnpike Authority, is a "client" for purposes of the attorney-client privilege, and consequently any legal advice rendered by retained counsel in connection with the plaintiff's sexual harassment complaint against the Turnpike Authority fell within the attorney-client privilege and was shielded from disclosure.[4] In contrast, where the attorney is not providing legal advice, but is *1246 merely performing "nonlegal duties" such as conducting an investigation, the attorney-client privilege otherwise available to a state agency will be deemed inapplicable. Ibid. The Court remanded for an in camera inspection of the documents to determine if they were protected by the privilege. Id. at 551-52, 691 A.2d 321.
Similarly, in In re Grand Jury Subpoenas Duces Tecum Served by Sussex County, 241 N.J.Super. 18, 28, 574 A.2d 449 (App.Div.1989), we held that "the [attorney-client] privilege is fully applicable to communications between a public body and an attorney retained to represent it." Specifically, we considered the situation of a law firm retained by a county Board of Freeholders as special counsel to "render `professional legal services'" in connection with the functioning of the County Adjuster so as to "`bring [the practices] of the... Adjuster's Office into compliance with... current laws and regulations....'" Id. at 22, 574 A.2d 449. We held that the attorneys who rendered that advice were entitled to assert the attorney-client privilege when subpoenaed to provide testimony before the grand jury that was investigating irregularities within the Adjuster's Office. Id. at 28-29, 574 A.2d 449.
Relying on a number of federal precedents, we held that so long as the attorneys rendered confidential legal advice, the government agency involved, namely the Board of Freeholders, was entitled to invoke the attorney-client privilege in the same fashion as any private individual or corporation because "many of the considerations which underlie application of the attorney-client privilege to corporations militate strongly in favor of its extension to public entities." Id. at 29, 574 A.2d 449 (internal citation omitted). We concluded that the attorney-client privilege applies because a governmental client has the same need as a corporation for assurance that legal advice provided by its attorneys will remain confidential. Ibid.
In applying the privilege to the relationship between an attorney and a government agency, we reasoned that a state agency has the same need for "sound legal advice" as a private client and that "the confidentiality of communications" between the government and its attorney is in the public interest:
The attorney-client privilege is thus deeply embedded in our jurisprudence and formed a part of the common law of England prior to the birth of this country. While the privilege was not originally embodied in either constitutional or statutory provisions, our Legislature ultimately codified it in N.J.S.A. 2A:84A-20. It presently appears in our Rules of Evidence. See [N.J.R.E. 504]. As we have pointed out, the privilege recognizes that sound legal advice ... serves public ends and that the confidentiality of communications between client and attorney constitutes an indispensable ingredient of our legal system.
[Id. at 27-28, 574 A.2d 449 (internal citations and quotations omitted).]
The attorney-client privilege is of course "`limited to communications made to the attorney in his professional capacity.'" Id. at 30, 574 A.2d 449. (quoting United Jersey Bank v. Wolosoff, 196 N.J.Super. 553, 562, 483 A.2d 821 (App.Div.1984)). "Stated ... differently, the privilege accords the shield of secrecy" to administrative agencies whenever "confidential communications" are rendered "within the context of the strict relation of attorney and client." Ibid.
Less than two years ago, we reiterated the conclusion we reached two decades ago in Grand Jury Subpoenas, that the attorney-client privilege applies to the relationship between government agencies and their lawyers. In Fisher v. Division of *1247 Law, 400 N.J.Super. 61, 65-66, 946 A.2d 53 (App.Div.2008), we considered the service fees to be imposed for the processing of an OPRA request concerning the assignment of deputy attorneys general to the Government Records Council and concerning the Division of Law's representation of that state agency. We held that it was reasonable for the Division to assign responsibility for retrieval and review of e-mails and computer files responsive to the OPRA request to the deputy attorneys general who had prepared those records, not only because the attorneys could do so more efficiently than the Division's clerical employees, id. at 65, 946 A.2d 53, but also because the Division of Law "provides legal advice to other agencies of state government that is subject to the attorney-client privilege." Id. at 73, 946 A.2d 53 (internal citations omitted).
Thus, in light of Payton, Grand Jury Subpoenas and Fisher, it is beyond dispute that the attorney-client privilege applies whenever confidential legal advice is rendered to state agencies, whether by private counsel as in Payton and Grand Jury Subpoenas, or by the Division, as was the case in Fisher.
Thus, the issue in this appeal is not whether the attorney-client privilege exists between the Division and the state agencies that request unpublished AAAs, but whether the AAAs, or more specifically the subjects and topics of the AAAs, constitute attorney-client privileged communications.
Plaintiff contends that the AAAs are not privileged communications. He supports this argument with two federal cases, the first of which is Tax Analysts v. Internal Revenue Service, 117 F.3d 607 (D.C.Cir. 1997). In Tax Analysts, the plaintiff, a nonprofit corporation, brought an action under the Freedom of Information Act[5] (FOIA), 5 U.S.C.A. § 552, to compel the Internal Revenue Service to disclose documents known as "Field Service Advice Memoranda" (FSAs). Tax Analysts, supra, 117 F.3d at 608. While the District of Columbia Court of Appeals discussed several theories under which the FSAs might be protected, the most relevant is the court's discussion of whether the FSAs were protected by the attorney-client privilege. The panel held that they were not. The court found that the FSAs differed from communications between a private attorney and a private client, and reasoned that:
no private attorney has the power to formulate the law to be applied to others. Matters are different in the governmental context, when the counsel rendering the legal opinion in effect is making law. Here, the Office of Chief Counsel is one of the principal tax lawgivers within the Executive Branch. Nearly all the interpretations of the tax laws the IRS applies in assessing and collecting taxes emanate from the Office of Chief Counsel. The Office drafts formal regulations (Treasury Decisions), Revenue Rulings, Private Letter Rulings, Technical Advice Memoranda, Treasury Memoranda, General Counsel Memoranda and Actions on Decisions. As we have discussed previously, FSAs issued by the Chief Counsel create a body of private law, applied routinely as the government's legal position in its *1248 dealings with taxpayers. It is this quality, not the objective character of the legal analyses in the documents, that [is] significant.
[Id. at 619 (internal citations omitted).]
Although the court found that, in general, the FSAs were not protected by the attorney-client privilege, it drew a line between FSAs that provided neutral and objective analyses of law and FSAs that revealed client confidences. Such FSAs that contained confidential information from the government agency would be "clearly covered" by the attorney-client privilege. Id. at 620.
Plaintiff also relies on an earlier decision by the United States Court of Appeals for the District of Columbia Circuit in Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854 (D.C.Cir.1980), in support of his argument that the AAAs are not privileged. In Coastal States, the plaintiff corporation filed suit under the FOIA to obtain the Department of Energy's (DOE) nonpublic interpretations of its regulations.[6]Coastal States, supra, 617 F.2d at 857. The court held that the memoranda at issue were not protected under the attorney-client privilege because there was no purpose to applying the privilege, as no confidential information had been transmitted to counsel. Id. at 863. The court stated, "[r]ather than `counseling,' intended to assist the agency in protecting its interests, the memoranda here seem to be neutral, objective analyses of agency regulations. They resemble, in fact, question and answer guidelines which might be found in an agency manual." Ibid. The court further observed that, even if the privilege would be served by extending it to the memoranda, the privilege should not be applied because there was no effort within the DOE to keep the memoranda confidential. Ibid.
The Division counters plaintiff's argument by contending that AAAs are privileged because they are confidential legal advice, and not merely objective analyses of the law, as was the case in Tax Analysts and Coastal States. The Division relies on our decision in Board of Education of West Windsor-Plainsboro Regional School District v. Board of Education of Delran, where we held that the AAA at issue in the case "was not a binding opinion, nor was it an administrative determination, but advice by the Attorney General to a client, which the client could accept or reject." 361 N.J.Super. 488, 493, 825 A.2d 1215 (App.Div.2003), certif. denied, 178 N.J. 454, 841 A.2d 92 (2004).
We agree that the AAAs are exempt from disclosure under OPRA because they are protected by the attorney-client privilege, but we reach that conclusion by a different path than the one urged by the Division. In particular, on the present state of the record we are unable to determine whether the Division is correct when it asserts that client confidences permeate the AAAs. For that reason, we do not consider the AAAs to be privileged on such grounds.
Instead we conclude that state agencies requesting legal advice from their attorneys concerning the exercise of the statutory responsibilities they are required by law to discharge are entitled to receive legal advice from their attorneys on a confidential basis. In Grand Jury Subpoenas, supra, 241 N.J.Super. at 28, 574 A.2d 449, as we have already noted, we "ha[d] no *1249 hesitancy in holding that the privilege is fully applicable to communications between a public body and an attorney [who] represent[s] it." We held that the privilege applied even to the portion of the attorneys' work that "contain[ed] a thorough review of the State statutes and regulations" that govern the functioning of a County Adjuster's office. Id. at 22, 30, 574 A.2d 449. So long as the attorney is providing "confidential communications" to an administrative agency client "within the context of the strict relation of attorney and client," a "shield of secrecy" protects that legal advice from disclosure. Id. at 30, 574 A.2d 449.
As is evident, we drew no distinction in Grand Jury Subpoenas between an attorney's role in "formulat[ing] the law to be applied to others"which was the basis for the District of Columbia Court of Appeals' rejection of the claimed privilege in Tax Analysts, supra, 117 F.3d at 619and the more traditional role of an attorney who represents a client in a litigated matter. Unlike the Tax Analysts court, we did not carve out an exception to the attorney-client privilege for legal opinions that interpret the statutes the agency is required to enforce. Although the lawyer "rendering the legal opinion in effect is making law," ibid., we did not view that circumstance as a basis for stripping such attorney-client communication of the protection of the privilege. Nothing in the decisional or statutory law of this State would support the miserly view of the attorney-client privilege that the D.C. Circuit adopted in Tax Analysts and Coastal States when it held that an attorney's opinion interpreting statutes and regulations is not protected by the attorney-client privilege.
Although our courts have recognized that the attorney-client privilege must be "construed strictly" because privileges "hav[e] a tendency to prevent the full disclosure of the truth," Selser, supra, 15 N.J. at 406, 105 A.2d 395, New Jersey's jurisprudence supports a more generous view of the privilege than that adopted by the District of Columbia Court of Appeals in Tax Analysts and Coastal States. So long as the attorney is "providing legal advice in some form," the privilege will apply. Payton, supra, 148 N.J. at 550, 691 A.2d 321 (emphasis added). As we observed in Grand Jury Subpoenas, our law rejects the sort of two-tiered classification of clients that the Court of Appeals ultimately embraced in Tax Analysts, supra, 117 F.3d at 619, when it held that the legal advice provided to a government client is not afforded the benefit of the attorney-client privilege when such advice concerns the interpretation of the statutes and regulations that the agency is responsible for enforcing.
Unlike the federal court, we held, in the public sector context, that "sound legal advice ... serves public ends...." Grand Jury Subpoenas, supra, 241 N.J.Super. at 27, 574 A.2d 449. We recognized in Grand Jury Subpoenas that a public agency has the same need for legal advice on the interpretation of the statutes that control its relationship with the public as does a corporation when the corporation seeks legal advice about the impact of a statute on its dealing with the public. Id. at 29, 574 A.2d 449.
Thus, unlike the District of Columbia Court of Appeals, we are satisfied that an administrative agency or other public body is entitled to maintain the confidentiality of the legal advice it receives from its attorney concerning the interpretation of the very statutes and regulations that the agency is responsible for enforcing. We see no reason to conclude that such legal advice is any less deserving of the protection afforded by the attorney-client privilege than the advice provided by corporate *1250 counsel to its clients. We thus part company with the District of Columbia Court of Appeals and choose not to adopt its Coastal States or Tax Analysts holdings.
We therefore conclude that when a government agency seeks legal advice from the Division on the interpretation of the statutes and regulations the agency is required to enforce, the legal advice rendered by the Division in the form of an unpublished AAA is a "record within the attorney-client privilege" and therefore exempt from disclosure pursuant to N.J.S.A. 47:1A-1.1.[7]
Plaintiff also seeks to avoid the attorney-client privilege by characterizing AAAs as "executive branch secret law." Such an argument is premised on the assumption that the AAAs are themselves the decisions of the agencies on various issues, instead of privileged legal advice which assists agencies in making their decisions. Plaintiff's assumption is incorrect because an opinion of the Attorney General is "not final agency action subject to review" on appeal. N.J. Civil Serv. Ass'n v. State, 88 N.J. 605, 612, 443 A.2d 1070 (1982). The agency decisions themselves are fully disclosed to the public, either through rulemaking or by agency adjudication, as required by the Administrative Procedure Act. See N.J.S.A. 52:14B-2, -3, -4, -7, -9 and -10. We thus reject plaintiff's argument that the AAAs are a nefarious body of "secret law" not protected by the statutory attorney-client privilege.
Plaintiff also points to a single sentence in the Restatement (Third) of The Law Governing Lawyers, which specifies that the attorney-client privilege does not apply to a document that "has an independent legal effect as an operative statement of governmental policy." Comment c to § 74. This comment simply recognizes that government attorneys may sometimes issue a directive intended to be a publicly disseminated statement of policy. Ibid. The Restatement's comment does not supersede the settled case law that legal advice rendered confidentially by an attorney to a government client is covered by the attorney-client privilege.
Plaintiff also argues that even if AAAs are privileged, the attorney-client privilege has been waived. Plaintiff maintains that because some of the Division's clients have occasionally posted AAAs online, such release destroys the purported privileged status of all other AAAs. These arguments are unpersuasive. Plaintiff has provided no authority to support his claim that an isolated waiver of the privilege by one client causes a waiver of the privilege for all other clients of that same lawyer. The Division carefully maintained the confidentiality of the legal advice that plaintiff seeks to obtain, when, as required by N.J.S.A. 2A:84A-20, the Division affirmatively asserted the attorney-client privilege at the time it denied plaintiff's two OPRA requests. The Division's manual for its attorneys unambiguously states that the Division's legal opinions, other than Attorney General Formal Opinions, are treated by the Division as "confidential documents protected by the attorney-client privilege."
Moreover, as we held in Grand Jury Subpoenas, supra, 241 N.J.Super. at 31-32, 574 A.2d 449, a "limited disclosure" of material subject to the attorney-client privilege is not automatically deemed an "absolute and complete waiver," especially *1251 where the documents released did not contain client confidences.
Plaintiff's claim of entitlement to a subject matter list rests upon his assertion that AAAs are not privileged. Because we have now rejected that argument, we likewise hold that he is not entitled to a subject matter list that is derived from those same privileged documents. We thus affirm the portion of the Law Division's December 17, 2008 order that denied plaintiff access to a list of the subject matter of each unpublished AAA issued since 2002.[8]

III.
We turn now to the Division's cross-appeal, in which the Division argues that the portion of the December 17, 2008 order requiring disclosure of the dates, docket numbers, receiving agencies, and authors of the AAAs should be reversed. In support of that argument, the Division relies on both the Rules of Professional Conduct and the attorney-client privilege. We need not analyze either of those sources of alleged authority, as we are satisfied that because the AAAs are themselves privileged, any list that would be derived therefrom is likewise privileged.
We are aware that courts do possess the authority to direct a party who asserts the attorney-client privilege to prepare a Vaughn index.[9] Fisher, supra, 400 N.J.Super. at 76, 946 A.2d 53. Such an index must describe each document in sufficient detail to provide the requestor "with as much information as possible to use in presenting his case" and to enable the "decision-maker's review of governmental records to determine whether they contain privileged material." Ibid.
However, a Vaughn index is used in circumstances where it is evident that some of the documents may not in fact be privileged. Ibid. The Law Division's order here was not appropriate because the judge had already determined that each of the AAAs was privileged. Moreover, the list required by the judge's order was too limited to be of any use to plaintiff in refining and narrowing his OPRA request. For those reasons, the list the judge required the Division to prepare could not advance either of the goals that a Vaughn index would achieve. Thus, although courts do possess the inherent authority to order the preparation of a Vaughn list, the list ordered here cannot be justified on such grounds. We thus reverse paragraph 2 of the December 17, 2008 order and remand for the entry of an order vacating its provisions.

IV.
A second issue raised in the Division's cross-appeal is the propriety of the February 18, 2009 order that required the Division to pay plaintiff $7,780 in fees and $330 in costs as a prevailing party.[10] *1252 As a result of our reversal of paragraph 2 of the December 17, 2008 order, plaintiff is no longer a prevailing party. Moreover, as plaintiff commented at appellate oral argument, the list the judge ordered the Division to provide is of no value to him because, without the subject matter or topic of the AAAs, the list cannot be used as a guide to any future OPRA requests. So viewed, plaintiff is no longer a prevailing party. We therefore reverse the entry of the February 18, 2009 order and remand for the entry of an order vacating it.
Affirmed on the appeal. Reversed on the cross-appeal, and remanded.
NOTES
[1] The Division of Law is a unit of the Attorney General's Office.
[2] Only select portions of the Handbook are contained in the record on appeal.
[3] The Law Division and the Government Records Council enjoy concurrent jurisdiction to hear and adjudicate any complaint by a party who claims to have been improperly denied access to government records. N.J.S.A. 47:1A-6, 7(b).
[4] We recognize that the attorney-client privilege asserted by the defendant state agency in Payton did not arise in the context of an OPRA request, but was instead asserted in the context of the plaintiff's demand for pretrial discovery. Id. at 532, 691 A.2d 321. We are satisfied, however, that the Court's conclusion about the attorney-client privilege being available to government agencies is not limited to a litigation context.
[5] "Attorneys in the national office of the Office of Chief Counsel prepare FSAs in response to requests from field personnel of either the Office of Chief Counsel or the IRS, such as field attorneys, revenue agents, and appeals officers. Field personnel request an FSA for legal guidance, usually with reference to the situation of a specific taxpayer. Each FSA includes a statement of issues, a conclusions section, a statement of facts, and a legal analysis section." Tax Analysts, supra, 117 F.3d at 609. While the FSAs are not binding, they are held in high regard and generally followed. Ibid.
[6] Specifically, plaintiff requested "memoranda from regional counsel to auditors working in DOE's field offices, issued in response to requests for interpretations of regulations within the context of particular facts encountered while conducting an audit of a firm." Coastal States, supra, 617 F.2d at 858. These memoranda were not binding, but were regularly followed. Id. at 859-60.
[7] We do not address the question of whether plaintiff is entitled to the AAAs under the common law right to know, as asserted in plaintiff's complaint. Plaintiff has not briefed that issue. An issue not briefed is deemed abandoned. El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J.Super. 145, 155 n. 2, 887 A.2d 1170 (App.Div.2005).
[8] Nothing in the Court's recent decision in Asbury Park Press v. County of Monmouth, 406 N.J.Super. 1, 966 A.2d 75 (2009) changes this result.
[9] The term Vaughn index is derived from Vaughn v. Rosen, 484 F.2d 820, 826-28 (D.C.Cir.1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), in which the court applied the requirements of EPA v. Mink, 410 U.S. 73, 87-88, 93 S.Ct. 827, 836, 35 L.Ed.2d 119, 132-33 (1973). A Vaughn index is comprised of affidavits containing a "relatively detailed" justification for the claim of privilege being asserted for each document. The judge analyzes the index to determine, on a document-by-document basis, whether each such claim of privilege should be accepted or rejected. Vaughn, supra, 484 F.2d at 826-27. The affidavit is "ordinarily ... composed without excessive reference to the actual language of the document." Ibid.
[10] See N.J.S.A. 47:1A-6 (authorizing the award of a "reasonable attorney's fee" to any "requestor who prevails in any proceeding" instituted under the Act).