**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2033-15T1

NEW JERSEY SECOND AMENDMENT
SOCIETY,

    Plaintiff-Appellant,

v.

DIVISION OF STATE POLICE OF THE
NEW JERSEY DEPARTMENT OF LAW AND
PUBIC SAFETY,

    Defendant-Respondent.

_____

        Argued October 30, 2017 — Decided June 19, 2018

        Before Judges Messano and Vernoia.

        On appeal from the Superior Court of New
        Jersey, Law Division, Mercer County, Docket
        No. L-1143-11.

        Richard M. Gutman argued the cause for
        appellant.

        Daniel M. Vannella, Deputy Attorney General,
        argued the cause for respondent (Christopher
        S. Porrino, Attorney General, attorney; Lisa
        A. Puglisi, Assistant Attorney General, of
        counsel; Daniel M. Vannella, on the brief).

PER CURIAM

Plaintiff New Jersey Second Amendment Society appeals from an order finding defendant New Jersey State Police's (NJSP) production of a redacted version of its Firearms Applicant Investigation Guide (Guide) complied with the requirements of the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and dismissing the complaint. We affirm in part, vacate in part and remand for further proceedings.

I.

We detailed the facts in our initial decision in his matter, N.J. Second Amendment Soc'y v. Div. of State Police of the N.J. Dep't of Law & Pub. Safety, No. A-2103-11T3, A-2396-11T3 (App. Div. May 14, 2015) (slip. op. at 4-8), and briefly summarize the facts pertinent to this appeal. In 2011, plaintiff served the NJSP with an OPRA request for production of "the most recent version" of the Guide. The NJSP distributes the Guide to State Police officers and municipal police departments throughout New Jersey to aid in the investigation of "firearms-related applications" and enforcement of "the State's firearms regulations in a uniform and standardized manner."

The NJSP denied plaintiff's request, asserting the Guide was exempt from disclosure under OPRA pursuant to a proposed regulation, N.J.A.C. 13:1E-3.2(a) (2011), which was implemented on November 3, 2010, pursuant to then-Governor Chris Christie's

Executive Order No. 47.[1]  See Exec. Order No. 47 (Nov. 3, 2010),

42 N.J.R. 2830(a) (Dec. 6, 2010).  The regulation exempted from

OPRA's definition of government records all "[s]tandard

[o]perating [p]rocedures and training materials," N.J.A.C. 13:1E-

3.2(a)(1) (2011), and "[r]ecords which may reveal . . . an agency's

surveillance, security or investigative techniques or procedures

. . . ," N.J.A.C. 13:1E-3.2(a)(3) (2011).

Plaintiff filed a verified complaint challenging the NJSP's

denial, and the Law Division subsequently determined the NJSP

properly denied access to the Guide and dismissed the complaint.

Three days later, N.J.A.C. 13:1E-3.2(a) (2011), which had been

adopted by the Department of Law and Public Safety (LPS), became

effective.  43 N.J.R. 3188(b) (Dec. 5, 2011).  Plaintiff appealed

the order dismissing the complaint.

In our decision on appeal, we explained that following the

complaint's dismissal, LPS proposed amendments to N.J.A.C. 13:1E-

3.2(a) (2011) because "paragraph a(1) of the [r]egulation 'd[id]

not clearly express the purpose for which it was promulgated — to

serve the public interest in protecting the confidentiality of

[LPS's] law enforcement and legal services functions.'"  N.J.

---

[1]  The Executive Order stated the proposed rule, and others, "shall
be and shall remain in full force and effect pending their adoption
as final rules pursuant to the provisions of the Administrative
Procedure Act," N.J.S.A. 52:14B-1 to -31.  Exec. Order No. 47.

Second Amendment Soc'y, slip op. at 6 (second and third alteration in original) (quoting 45 N.J.R. 2023(a) (Sept. 3, 2013)). We explained LPS intended the amendments "to clarify that not all [LPS] standard operating procedures and training materials are considered confidential." Ibid. (alteration in original) (quoting 45 N.J.R. 2023(a)). The amendments therefore limited the OPRA exemption to only those standard operating procedures and training materials that "may reveal an agency's investigative . . . or operational techniques, measures, or procedures which, if disclosed, would create a risk to the safety of persons [or] property, . . . or compromise an agency's ability to effectively conduct investigations . . . ." Id. at 6-7 (emphasis in original) (quoting 45 N.J.R. 2023(a)).

We further noted the amended N.J.A.C. 13:1E-3.2(a), which became effective April 7, 2014, provides in pertinent part as follows:

> [T]he following records shall not be considered government records subject to public access pursuant to [OPRA]:
>
> . . . .
>
> 2. Records, including standard operating procedures, manuals, and training materials, that may reveal . . . an agency's surveillance, security, tactical, investigative, or operational techniques, measures, or procedures, which, if disclosed, would create a risk to the safety of persons,

> property, electronic data, or software, or
> compromise an agency's ability to effectively
> conduct investigations;
>
> [Id. at 7-8 (emphasis added) (quoting N.J.A.C.
> 13:1E-3.2(a)(2)).]

We observed the Law Division considered plaintiff's request for the Guide under N.J.A.C. 13:1E-3.2(a) (2011), which included a blanket exemption from OPRA's definition of government records for all standard operating procedures, id. at 8, and noted that where a government entity "asserts an exemption, OPRA clearly favors the production of redacted government records," id. at 13 (citing N.J.S.A. 47:1A-5(g)). We therefore reversed the order dismissing the complaint and remanded for the trial court to conduct a hearing to determine "whether [the amended] section a(2) of [N.J.A.C. 13:1E-3.2] applies to exempt the Guide from OPRA's definition of a government record and whether the Guide should be produced in redacted form." Ibid.

Following the remand, the NJSP provided the Guide to plaintiff with the following portions redacted: (1) a section titled "Investigation" and five sections titled "Investigation of the Applicant," each of which detail investigatory procedures for various firearms-related applications;[2] (2) the Firearms

---

[2] We have been provided with the redacted and unredacted versions of the Guide provided to the trial court. The redacted

Investigation Report Form 407 (the Form) and the accompanying description of the procedure for completing and utilizing the Form during an investigation; and (3) Attachments A, B and C, consisting of two letters and one memorandum from the Attorney General's office that include general legal guidance pertaining to firearms permit processing.  More particularly, Attachment A is a January 24, 1996 letter from a Deputy Attorney General to a Piscataway Police Department detective.  Attachment B is an undated and unsigned letter to a Deputy Attorney General.  Attachment C is a May 26, 2000 memorandum from a Deputy Attorney General to the Unit Head of the NJSP Firearms Investigation Unit.

On remand, the court conducted an in camera review of the redacted and unredacted versions of the Guide.  The court also considered a certification from NJSP Lieutenant Glenn Ross[3]

---

"Investigation" paragraphs are contained in the Guide's "General Information" section.  The redacted paragraphs titled "Investigation of the Applicant" are respectively contained in the Guide's "Firearms ID Cards," "Permit to Purchase," "Duplicate ID Cards," "Permit to Carry," and "Police Applicants ID Cards" sections.  The redacted Firearms Investigation Report Form 407 and a description of the procedures for completing and utilizing the Form during an investigation are included in the Guide's "Firearms Investigation Report" section.

[3]  The court was also presented with the certification of NJSP Lieutenant Darryl L. Williams, who is assigned to the Firearms Investigation Unit.  Williams's certification also explains the NJSP's redactions to the Guide and the manner in which disclosure of the redacted information in the sections titled "Investigation"

explaining the NJSP limited its redactions of the Guide to "only

. . . the steps . . . implemented when conducting the actual

investigation of firearms applicants, the forms used solely for

the investigation itself, and attorney-client privileged"

correspondence which "provid[ed] legal advice on certain issues

related to firearms law."

Ross certified the redacted materials and standards describe

uniform investigatory procedures and "reveal exactly how the

investigations are to be conducted, and what steps to take and

even in what specific order." The redacted portions explain the

investigators' "sources of information when conducting an

investigation," identifies the "types of databases" utilized, and

specifies "what parts of the databases to access, and at what

points in time during the investigation to do so." Ross also

explained that the redacted portions of the Guide "show exactly

what types of information the investigator is to derive from the

applicant and" how to address "different responses" from the

applicant and "the applicant's references."

According to Ross, disclosure of the redacted portions of the

Guide "would provide the same detailed insight into how the

---

and "Investigation of Applicant," and those describing the Form,
will interfere with law enforcement's ability to effectively
investigate firearms permit applications.

investigations are conducted to those who are being investigated" and interfere with law enforcement's ability to "to weed out applicants who are attempting to circumvent the firearms laws." He explained that disclosure of the redacted investigative techniques, references to databases, and indicators investigators are directed to consider when speaking with applicants and their references would permit those being investigated "to circumvent [the] procedures or manipulate the investigative process."

Ross further stated that a firearms applicant investigation report is confidential under N.J.A.C. 13:54-1.15,[4] and disclosure of its contents would reveal investigator work product, including the manner in which an investigation is conducted, and what information was and is being sought from various sources. Ross opined that releasing the Form, and the accompanying redacted materials describing the procedure for completing the Form, would result in disclosure of investigatory techniques that would aid applicants seeking to circumvent and manipulate the investigatory process.

---

[4]   In pertinent part, N.J.A.C. 13:54-1.15 states that "any background investigation conducted . . . of any applicant for a permit, firearms identification card license, or registration . . . is not a public record and shall not be disclosed to any person not authorized by law . . . ."

Ross explained the purpose of the firearms permit applicant investigatory process is to protect public safety. He stated that disclosure of the redacted investigatory techniques and procedures would "compromise [the] agency's ability to effectively conduct investigations" and "increase the risk that those seeking to unlawfully obtain firearms would succeed in doing so."

In its oral opinion, the court accepted Ross's unrebutted representations and found disclosure of the redacted sections of the Guide would provide "a precise roadmap into the entire investigation of a firearms application" to those with an "intent to circumvent the law." The court determined disclosure of the redacted investigative techniques created a risk to public safety. The court also rejected plaintiff's contention there was a waiver of the attorney-client privilege as to the letters and memorandum from the Attorney General's office, finding there was no evidence they were publicly distributed or otherwise made publicly available. The court determined the redacted portions of the Guide were exempt from disclosure under N.J.A.C. 13:1E-3.2(a)(2), and entered an order dismissing the complaint.

Plaintiff appealed and presents the following arguments for our consideration:

POINT I

OPRA REQUIRES THAT REDACTIONS BE MINIMIZED AND JUSTIFIED[.]

POINT II

[THE] TRIAL COURT . . . ERRED IN DENYING ACCESS TO ALL OF THE GUIDE'S INFORMATION REGARDING INVESTIGATORY PROCEDURES.

A. Contrary to the Appellate Division's instruction[s] to minimize redactions, the trial court . . . erred by permitting NJSP to redact all portions of the Guide regarding investigative procedures as if the defunct blanket exemption for all investigative procedures were still in effect[.]

B. [The] [t]rial court . . . disregarded the Appellate Division's suggestion that publicly-available information be disclosed[.]

1. [The] [t]rial court . . . failed to consider that the redacted Firearms Application Investigation Report form is currently available to the world on NJSP's website[.]

2. [The] [t]rial court decision failed to consider that the other redacted investigative information includes publicly-available information.

C. [T]he [t]rial court . . . erred by accepting a conclusory assertion of harm[.]

POINT III

[THE] [T]RIAL COURT . . . ERRED IN RULING THAT NJSP'S DISTRIBUTION OF THE GUIDE'S ATTACHMENTS A, B, AND C TO POLICE DEPARTMENTS THROUGHOUT THE STATE AND POSTING ON NJSP'S WEBSITE DID NOT WAIVE NJSP'S ATTORNEY-CLIENT PRIVILEGE[.]

A. NJSP did not even attempt to satisfy its burden of proving that the Guide it distributed to numerous police departments omitted Attachments A, B, and C[.]

B. NJSP did not even attempt to satisfy is burden of proving that the editions of the Guide it previously posted on its website omitted Attachments A, B, and C[.]

## II.

A "trial court's determinations with respect to the applicability of OPRA are legal conclusions subject to de novo review." K.L. v. Evesham Twp. Bd. of Educ., 423 N.J. Super. 337, 349 (App. Div. 2011) (quoting O'Shea v. Twp. of W. Milford, 410 N.J. Super. 371, 379 (App. Div. 2009)). "Our standard of review is plenary with respect to [a court's] interpretation of OPRA and its exclusions." Gilleran v. Twp. of Bloomfield, 440 N.J. Super. 490, 497 (App. Div. 2015), rev'd on other grounds, 227 N.J. 159 (2016); accord Brennan v. Bergen Cty. Prosecutor's Office, ___ N.J. ___, ___ (2018). We employ those standards in considering application of N.J.A.C. 13:1E-3.2(a)(2) to the redacted Guide. See Klawitter v. City of Trenton, 395 N.J. Super. 302, 318 (App. Div. 2007) (noting "the interpretation of . . . regulations . . . is a purely legal issue, which we consider de novo").

In enacting OPRA, the Legislature intended "to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded

11

process."  Mason v. City of Hoboken, 196 N.J. 51, 64 (2008) (quoting Asbury Park Press v. Ocean Cty. Prosecutor's Office, 374 N.J. Super. 312, 329 (Law Div. 2004)).  OPRA mandates that "government records shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest, and any limitations on the right of access . . . shall be construed in favor of the public's right of access[.]"  N.J.S.A. 47:1A-1.

The right of access to government records under OPRA is not absolute.  Kovalcik v. Somerset Cty. Prosecutor's Office, 206 N.J. 581, 588 (2011).  "That conclusion rests on the fact that OPRA exempts numerous categories of documents and information from disclosure."  Ibid.  Among those categories are exemptions for "any record within the attorney-client privilege . . .; [and] security measures and surveillance techniques which, if disclosed, would create a risk to the safety of persons, property, electronic data or software . . . [.]"  N.J.S.A. 47:1A-1.1.  In addition, "an exemption from a right of public access to a government record can be established . . . by [an] administrative rule . . . ."  Slaughter v. Gov't Records Council, 413 N.J. Super. 544, 550 (App. Div. 2010) (quoting Mason, 196 N.J. at 65); see also N.J.S.A. 47:1A-9(a).

Here, we consider whether the redacted portions of the Guide are exempt from disclosure under N.J.A.C. 13:1E-3.2(a)(2) as "investigative, or operational techniques, measures or procedures, which, if disclosed, would . . . compromise [the NJSP's] ability to effectively conduct [firearms permit] investigations," as required by our remand.

### III.

We first turn to whether the redacted sections of the Guide titled "Investigation" and "Investigation of the Applicant," and the Form and Guide materials describing the procedure for completing and utilizing the Form are exempt from OPRA disclosure. Confidentiality in investigative techniques is "vital not only because it serves to protect government sources of information, but also because it enhances the effectiveness of investigative techniques and procedures." N. Jersey Media Grp., Inc. v. Bergen Cty. Prosecutor's Office, 447 N.J. Super. 182, 203 (App. Div. 2016). This is precisely the underlying purpose of N.J.A.C. 13:1E-3.2(a)(2). See 45 N.J.R. 2023(a) (stating that the purpose of N.J.A.C. 13:1E-3.2(a)(2) is to protect the confidentiality of records which, if disclosed, would compromise an agency's investigatory process).

The parties do not dispute that the redacted portions of the Guide describing specific investigatory procedures for various

firearms applications are "investigative techniques" under N.J.A.C. 13:1E-3.2(a)(2). Rather, plaintiff contends the NJSP has not met its burden of showing that disclosure of the investigative techniques would "compromise [its] ability to effectively conduct [firearms] investigations" under N.J.A.C. 13:1E-3.2(a)(2). We disagree.

"The law . . . places the burden on the public agency to prove that it appropriately denied a request," Brennan, ___ N.J. at ___ (citing N.J.S.A. 47:1A-6), and that its denial is authorized by law, Paff v. Ocean Cty. Prosecutor's Office, 446 N.J. Super. 163, 178 (App. Div.) (citing N.J.S.A. 47:1A-6), certif. granted, 228 N.J. 403 (2016). Generally, "[u]nder OPRA, a public agency seeking to restrict the public's right of access to government records must produce specific reliable evidence sufficient to meet a statutorily recognized basis for confidentiality." Courier News v. Hunterdon Cty. Prosecutor's Office, 358 N.J. Super. 373, 382-83 (App. Div. 2003).

The N.J.A.C. 13:1E-3.2(a) exemption adopted in 2014 was intended to include firearms application investigative techniques and procedures such as those encompassed in the redacted portions of the Guide. In its proposal for the 2014 amendments to N.J.A.C. 13:1E-3.2(a), LPS expressly stated the exemption "covers . . . the standard operating procedure[s] for investigation of firearms

applications." 45 N.J.R. 2023(a). Thus, LPS recognized, as the motion court did here, that disclosure of firearms application investigative techniques and procedures created a risk to public safety and would compromise law enforcement's ability to effectively investigate firearms applications.

In addition, on remand the NJSB submitted specific reliable evidence establishing that disclosure of the Guide's sections titled "Investigation," "Investigation of the Applicant," and the Form and the Guide materials describing the procedure for completing and utilizing the Form "would create a risk to the safety of persons, property, . . . or compromise [its] ability to effectively conduct investigations." N.J.A.C. 13:1E:3.2(a)(2). As the trial court observed, Ross provided a detailed and credible explanation that the redacted sections of the Guide detail the techniques, timing, information, data sources, and response strategies law enforcement officers are required to employ and follow in their investigations of individuals seeking various firearms permits. Moreover, although the court did not expressly rely on the Williams certification, it also provides evidential support for the court's findings. The certifications establish that disclosing the redacted information would provide applicants being investigated with the ability to manipulate and circumvent the investigative process and, in doing so, interfere with law

enforcement's "ability to effectively conduct" firearm permit investigations.  N.J.A.C. 13:1E-3.2(a)(2).

We are therefore satisfied the credible evidence supports a finding that the redacted sections of the Guide are exempt from disclosure under OPRA pursuant to N.J.A.C. 13:1E-3.2(a)(2).

IV.

We are also not persuaded by plaintiff's contention the Form and Guide materials describing its completion and use should be disclosed because it is publically available on the internet.  We have compared the version of the Form plaintiff contends is available on the internet with the current Form provided for our in camera review, and the two versions are different.  Thus, the premise for plaintiff's contention — that the NJSP has made the current Form publically available — is erroneous.

Plaintiff also argues that since the NJSP once made other versions of the Form publicly available, there is a diminished need for confidentiality.  Plaintiff relies on language in Keddie v. Rutgers, State University, 148 N.J. 36, 50-52 (1997), where the Court addressed the effect of public disclosure of documents on the balancing of interests required to assess a request made under the common-law right of access to public records.  Here, however, we are not required to conduct the balancing test the Court applied in Keddie because we consider only whether the redacted portions

of the Guide are exempt from disclosure under N.J.A.C. 13:1E-3.2(a)(2).  Id. at 49-50.

We reject plaintiff's assertion the NJSP "closed the barn door after the horse escaped," by removing a prior version of the Form from its homepage.  As noted, plaintiff has not demonstrated the current version of the Form is publicly available.  Moreover, the mere fact that a prior, different version may be available does not diminish the NJSP's interest in keeping its current investigatory techniques confidential, nor does it diminish the applicability of N.J.A.C. 13:1E-3.2(a)(2)'s exemption to the current version.[5]

V.

We next consider the court's finding that Attachments A, B and C are exempt from disclosure because they are attorney-client privileged communications.  See N.J.S.A. 47:1A-1.1 (exempting attorney-client privileged communications from the definition of government records under OPRA).

---

[5] We therefore deny plaintiff's motion (M-000183-16) to take judicial notice of materials it contends are available on the internet, or, in the alternative, to supplement the record with such materials.

Plaintiff concedes the Attachments constitute attorney-client privileged communications,[6] see, e.g., Paff v. Div. of Law, 412 N.J. Super. 140, 154 (App. Div. 2010) ("[T]he attorney-client privilege applies whenever confidential legal advice is rendered to state agencies, whether by private counsel . . . or by the Division [of Law] . . . ."), but argues the NJSP waived the privilege by disseminating the Attachments with the Guide to police departments throughout the State.

The attorney-client privilege is codified in N.J.S.A. 2A:84A-20(1) and N.J.R.E. 504. The purpose of the attorney-client privilege is "to encourage clients to make full disclosure to their attorneys." Paff, 412 N.J. Super. at 150 (quoting Macey v. Rollins Envtl. Servs. (N.J.), Inc., 179 N.J. Super. 535, 539 (App. Div. 1981)). The attorney-client privilege is "ordinarily waived when a confidential communication between an attorney and a client is revealed to a third party." O'Boyle v. Borough of Longport, 218 N.J. 168, 186 (2014) (citation omitted).

In our view, the evidentiary record before the trial court is insufficient to permit a determination of whether distribution

_____

[6] We are therefore not required to determine whether Attachments A, B and C are in fact attorney-client privileged communications. An issue not briefed on appeal is deemed waived. Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008); Zavodnick v. Leven, 340 N.J. Super. 94, 103 (App. Div. 2001).

of Attachments A, B and C as part of the Guide to multiple law enforcement agencies resulted in a waiver of the attorney-client privilege.  The court did not, however, determine the identity of the client for each of the communications, see N.J.S.A. 2A:84A-20(1); N.J.R.E. 504 (providing that the "client has [the] privilege"); see also Paff, 412 N.J. Super. at 151 (finding the State agency to which the Division of Law provides legal advice is the client for purposes of determining the attorney-client privilege), and did not consider or decide whether distribution of each of the communications resulted in the client's waiver of the privilege.

For those reasons, we remand for the court to determine whether there was a waiver of the attorney-client privilege as to the communications in Attachments A, B and C.  If it determines the privilege was waived as to any of the Attachments, the court shall order disclosure of the Attachment.

The NJSP claims it did not waive the privilege by disseminating the Attachments with the Guide because the "execution and enforcement" of firearms laws are "responsibilities shared between the NJSP and other, local law enforcement agencies." The NJSP also asserts that such disclosures are regarded "as part of the same client or co-clients, or as third parties with a common interest in the enforcement of the State's firearms application

laws," and relies on the New Jersey Supreme Court's decision in O'Boyle, 218 N.J. at 185-88, and our decision in In re Grand Jury Subpoenas Duces Tecum Served by Sussex County., 241 N.J. Super. 18 (App. Div. 1989).

The NJSP's reliance on Grand Jury Subpoenas, 241 N.J. Super. at 32, is misplaced. In Grand Jury Subpoenas, a Sussex County Freeholder publicly distributed a preliminary report prepared by a private law firm the Sussex County Board of Freeholders retained to serve as special counsel. Id. at 22. The report "contain[ed] a thorough review of State statutes and regulations and ma[de] various recommendations to correct the deficiencies found to exist in the Adjuster's Office." Id. at 22-23.

There, we determined that the Freeholder's public release of the report did not constitute a complete waiver of the attorney-client privilege between the firm and the Board because the report "did not expressly disclose communications made to [the firm] by the Board. Rather, it set forth the statutory and regulatory framework within which the Adjuster's Office must operate and provided preliminary recommendations designed to cure deficient past practices and procedures." Id. at 31-32. Thus, we held that the public release was merely a "limited disclosure" that did not constitute an "absolute and complete waiver" of the privilege. Id. at 31. We did not hold the documents themselves were protected

from further disclosure, but rather, that their dissemination did not result in a complete waiver of the privilege and thus the firm's attorneys were not required to testify to privileged information regarding their representation of the Board of Freeholders. Ibid.

Although we recognize that the Attorney General is "the sole legal adviser, attorney or counsel, . . . for all officers, departments, boards, bodies, commissions and instrumentalities of the State Government," Paff, 412 N.J. Super. at 151, it does not follow that the privilege is always preserved where State and municipal agencies share confidential attorney-client communications or information with one another. Thus, we are unconvinced the Court's holding in O'Boyle, 218 N.J. at 201, supports the NJSP's assertion that the NJSP and local law enforcement agencies share a "common interest," and NJSP's dissemination of the Attachments to third parties — other law enforcement agencies — did not constitute a waiver of the privilege.

In O'Boyle, the plaintiff sought documents exchanged between a private attorney representing a former Longport zoning and planning board member and the attorney representing the Longport municipality. Id. at 176. There, the private attorney prepared a "joint strategy memorandum and a compendium of documents . . .

21

and sent them to the municipal attorney" following an agreement "that they cooperate in the defense of current and anticipated litigation filed by [the plaintiff]." Id. at 176-77.

The O'Boyle Court expressly adopted the three-pronged "common interest rule" as articulated in Laporta v. Gloucester County Board of Chosen Freeholders, 340 N.J. Super. 254, 262 (App. Div. 2001). Id. at 198-99. Under this rule, a party may invoke a common interest exception to waiver of the attorney-client privilege resulting from disclosure to third parties where:

> (1) the disclosure is made due to actual or anticipated litigation; (2) for the purpose of furthering a common interest; and (3) the disclosure is made in a manner not inconsistent with maintaining confidentiality against adverse parties. It is not necessary for actual litigation to have commenced at the time of the transmittal of information for the privilege to be applicable.
>
> [Id. at 190-91 (internal citations omitted) (quoting Laporta, 340 N.J. Super. at 262).]

The Court further noted that "communications need not only be among counsel for the clients[;] [c]ommunications between counsel for a party and an individual representative of a party with a common interest are also protected." Id. at 191 (quoting Laporta, 340 N.J. Super. at 262). The Court determined the documents sought by the plaintiff were exempt from OPRA disclosure under the first two Laporta prongs because the clients anticipated

22

future litigation from plaintiff and shared a common purpose: "to repel further legal challenges from a citizen who did not agree with the manner in which elected and appointed officials discharged their public duties." Id. at 199.

The Court also determined that the manner in which the material was disseminated was "calculated to preserve its confidentiality" under the third Laporta prong because "[t]here [was] no evidence that the municipal attorney shared the material with anyone else." Id. at 200. The Court affirmed our determination that the municipal residents and the former board member "shared a common interest that permitted non-disclosure of the withheld documents." Id. at 177, 201.

Here, the record is inadequate to determine if the circumstances surrounding the dissemination of one or more of the Attachments support application of the common interest exception to waiver of the attorney-client privilege under the Laporta standard. We do not decide the issue and leave its resolution to the remand court.

Accordingly, we vacate the Law Division's order determining there was no waiver of the attorney-client privilege as to Attachments A, B and C.

Plaintiff's remaining arguments are without merit sufficient to warrant discussion in a written opinion. R. 2:11-3(e)(3)(E).

23

Affirmed in part, vacated in part, and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION