995 A.2d 1109 (2010)
413 N.J. Super. 435
COMMITTEE TO RECALL Robert MENENDEZ FROM the OFFICE OF U.S. SENATOR, Plaintiff-Appellant,
v.
Nina Mitchell WELLS, Secretary of State, and Robert F. Giles, Director of the Division of Elections, Defendants-Respondents, and
Robert Menendez, Indispensable Party.
DOCKET NO. A-2254-09T1.
Superior Court of New Jersey, Appellate Division.
Argued March 2, 2010.
Decided March 16, 2010.
*1111 Daniel P. Silberstein, argued the cause for appellant (Daniel P. Silberstein, P.C. and Oller & Luzzi, attorneys, Rockaway; Mr. Silberstein, of counsel; Mr. Silberstein and Richard Luzzi, on the brief).
Donna Kelly, Assistant Attorney General, argued the cause for respondents Secretary of State and Director of the Division of Elections (Paula T. Dow, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Ms. Kelly and Jason Postelnik, Deputy Attorney General, on the brief).
Marc E. Elias (Perkins Coie) of the Washington D.C. bar, admitted pro hac vice, argued the cause for indispensable party Robert Menendez (Genova Burns, Newark and Mr. Elias, attorneys; Angelo Genova, Newark and Mr. Elias on the brief). James K. Pryor and Peter Ferrara of the Washington D.C. bar, admitted pro hac vice, attorneys for amicus curiae American Civil Rights Union.
Before Judges STERN, GRAVES and SABATINO.
PER CURIAM.
Plaintiff Committee appeals from the final administrative determination of the Secretary of State declining to accept its notice of intention to recall United States Senator Robert Menendez. The New Jersey Constitution, art. I, ¶ 2b, and its implementing statute, the Uniform Recall Election Law, permit such a petition, but the Secretary of State declined to accept the filing because "the qualifications and election of a Member of the United States Senate is a matter of exclusive jurisdiction of federal authority and ... neither the United States Constitution nor federal statute provide for a recall proceeding for a federally-elected official." Plaintiff argues that the Secretary of State erred in refusing to file the notice of intention because the notice met the State's statutory requirements and the Secretary of State had "no authority to unilaterally determine which provisions of the New Jersey Constitution are valid." The plaintiff also asserts that the issue of the federal constitutionality of the recall of a United States Senator is not yet "ripe" for consideration (and that "the doctrine of `judicial restraint'" requires us "to defer resolution of the constitutional question until such time as the Committee collects the requisite number of signatures") but that "the Committee is entitled to an injunction ordering respondents to approve their notice of intent to recall," in part, because the recall process must proceed as "core political speech," protected by the First Amendment to the Federal Constitution and N.J. Const. art. I, ¶ 18.

I.
There is no substantial factual dispute. On November 7, 2006, Robert Menendez was elected to represent New Jersey in the United States Senate. Under federal law, 2 U.S.C.A. § 1a, New Jersey presented the Senate with a certification, confirming that on November 7, 2006, Menendez was "chosen by the qualified electors of the State of New Jersey" to represent the State in the Senate for a term of six years, beginning on January 3, 2007. 153 Cong. Rec. S3 (daily ed. Jan. 4, 2007). On January 4, 2007, the Vice President administered the "oath prescribed by law," Menendez subscribed to it, and he was officially seated. Id. at S4. His present term in the Senate is scheduled to end on January 3, 2013. Id. at S3.
*1112 On September 25, 2009, plaintiff initiated the recall process by filing a notice of intention to recall Senator Menendez, pursuant to N.J.S.A. 19:27A-6, a section of the Uniform Recall Election Law, N.J.S.A. 19:27A-1 to -18, with then-New Jersey Secretary of State Nina Wells,[1] and with Robert F. Giles, the Director of the Division of Elections. The notice of intention listed RoseAnn Salanitri, Suzanne M. Kimble, and Adrianne S. Knobloch, as the members of the recall committee who would serve as the representatives of the sponsors and signers of a recall petition. The notice of intention also provided, in accordance with N.J.S.A. 19:27A-6(b), the addresses of the sponsors, which were all within the State, and a statement that the sponsors supported the recall.[2]
By letter dated October 5, 2009, Giles advised plaintiff that the notice of intention was "currently under legal review."
On November 10, 2009, plaintiff filed a second notice of intention to recall Senator Menendez, substituting Daryl Haggerty as a member of the recall committee in place of Salanitri. The sponsors set forth that under N.J.S.A. 19:27A-6(e) and (f), they "elected not to provide a statement regarding this recall," meaning they would not provide a reason for removal, and did not request a special election.
On January 11, 2010, the Secretary, in her capacity as the State's chief election official, issued a final administrative agency determination that "neither the Notice of Intention to Recall nor the proposed Petition can be accepted for filing or review."[3] As already noted, she stated, albeit without citation to any specific legal authority, that "[i]t has been determined that the qualifications and election of a Member of the United States Senate is a matter of exclusive jurisdiction of federal authority and that neither the United States Constitution nor federal statute provide for a recall proceeding for a federally-elected official."
On January 13, 2010, plaintiff filed an application for emergent relief with this court, seeking temporary injunctive relief and expedited review. On January 14, 2010, we permitted plaintiff to "file a motion for emergent relief and/or a motion to accelerate the appeal." On February 4, 2010, we entered an order granting plaintiff's motion for acceleration and a separate order granting the American Civil Rights Union's emergent application to participate as amicus curiae.

II.
Plaintiff argues that the Secretary of State erred in determining that its notice of intention to recall Senator Menendez could not be accepted for filing or review even though the notice met the statutory requirements. It also argues that the Secretary, as a member of the State's Executive Branch of government, had no authority to determine that the State's recall election laws were invalid. We need not address that issue, however, because we were advised at oral argument that the determination was made pursuant to advice of the Attorney General, who is charged by law with the obligation to represent *1113 the State and render legal advice[4] to State officers and administrative agencies which is binding on the Executive Branch until such time as the courts address the issue. See N.J.S.A. 52:17B-5; 52:17A-4(e). See also Quarto v. Adams, 395 N.J.Super. 502, 513, 929 A.2d 1111 (App.Div.2007). At the argument before us, plaintiff did not contend otherwise.

III.
The recall provision of the State Constitution, N.J. Const. art. I, ¶ 2b, was adopted in 1993. On the November 2, 1993 ballot, public question number one asked voters, "[s]hall Article 1, paragraph 2 of the [New Jersey] Constitution be amended, as proposed by the Legislature, to provide for the recall election of elected officials?" The interpretive statement provided, in part, that:
This amendment to the Constitution permits the voters to remove elected officials, after at least one year of service, through the process of a recall election.... This applies to any elected official in this State and to the United States Senators and Congressmen elected from New Jersey.... The amendment also provides that the reasons for a recall election shall be a political question, so that the courts cannot set aside a recall on the grounds that the reasons for it are in some way inadequate.
At present, statutory provisions make certain elected municipal and county officials subject to removal by a recall election. However, constitutional rather than statutory provisions are necessary to provide for the recall election of the Governor, members of the Legislature, U.S. Senators, and Congressmen. There are presently 15 states that have a statewide recall election.
By an overwhelming margin of more than three to one,[5] the citizens of New Jersey voted in favor of the public question, and article I, paragraph 2 of the New Jersey Constitution was amended and now provides:
a. All political power is inherent in the people. Government is instituted for the protection, security, and benefit of the people, and they have the right at all times to alter or reform the same, whenever the public good may require it.
b. The people reserve unto themselves the power to recall, after at least one year of service, any elected official in this State or representing this State in the United States Congress. The Legislature shall enact laws to provide for such recall elections. Any such laws shall include a provision that a recall election shall be held upon petition of at least 25% of the registered voters in the electoral district of the official sought to be recalled. If legislation to implement this constitutional amendment is not enacted within one year of the adoption of the amendment, the Secretary of State shall, by regulation, implement the constitutional *1114 amendment, except that regulations adopted by the Secretary of State shall be superseded by any subsequent legislation consistent with this constitutional amendment governing recall elections. The sufficiency of any statement of reasons or grounds procedurally required shall be a political rather than a judicial question.
On May 17, 1995, the Uniform Recall Election Law, N.J.S.A. 19:27A-1 to -18, was enacted. It implemented the constitutional amendment and repealed all previous recall laws. See also N.J.A.C. 19:25-14.1 to -14.14 ("Recall Elections"). N.J.S.A. 19:27A-2 provides that:
Pursuant to Article I, paragraph 2b. of the New Jersey Constitution, the people of this State shall have the power to recall, after at least one year of service in the person's current term of office, any United States Senator or Representative elected from this State or any State or local elected official in the manner provided herein.
The language of the state constitutional amendment and the implementing legislation is clear and unambiguous. The enactments must be given, at least presumptively, their plain meaning to authorize, among other office-holders, the recall of a United States Senator in New Jersey. In re Att'y Gen.'s "Directive on Exit Polling: Media & Non-Partisan Pub. Interest Groups", 200 N.J. 283, 296, 981 A.2d 64 (2009); State v. Trump Hotels & Casino Resorts, Inc., 160 N.J. 505, 527, 734 A.2d 1160 (1999); Bd. of Chosen Freeholders of Morris v. State, 159 N.J. 565, 575-76, 732 A.2d 1053 (1999). We cannot construe these state enactments otherwise in order to avoid consideration, if not definitive resolution, of their constitutional validity. See, e.g., State v. Grenci, 197 N.J. 604, 619, 964 A.2d 776 (2009); Doe v. Poritz, 142 N.J. 1, 29, 662 A.2d 367 (1995).
The recall process is initiated by filing a notice of intention in accordance with N.J.S.A. 19:27A-6, which provides:
Prior to collecting any signatures, the sponsors of a recall petition shall file a notice of intention with the appropriate recall election official. The notice of intention shall contain the following information:
a. the name and office of the elected official sought to be recalled;
b. the name and business or residence address of at least three sponsors of the recall petition who shall constitute a recall committee which shall represent the sponsors and signers of the recall petition in matters relating to the recall effort, provided that no recall committee shall sponsor the recall of more than one officeholder and, if a recall effort fails at the ballot, the sponsoring recall committee and the members thereof shall not again sponsor, nor shall the recall committee again finance, an effort to recall the targeted officeholder during the same term of office in which the failed recall effort was attempted;
c. the name of the recall committee, which shall be expressed in the following form: "COMMITTEE TO RECALL [name of the official sought to be recalled] FROM THE OFFICE OF [name of the office]";
d. a statement certified by each member of the recall committee that the member is registered to vote in the jurisdiction of the official sought to be recalled and that the member supports the recall of the named official and accepts the responsibilities associated with serving on the recall committee;
e. at the option of the recall committee, a statement, not in excess of 200 words, of the reasons for the recall; and

*1115 f. a statement as to whether the recall election shall be held at the next general election or regular election, as appropriate, or at a special election, as provided in section 13 of this act.
A "recall election official" is "the official authorized by law to receive nominating petitions for an elective office ... [.]" N.J.S.A. 19:27A-3. The Secretary of State receives petitions for nominations of candidates for the United States Senate. N.J.S.A. 19:13-3. The Division of Elections, the administrative agency that assists the Secretary in election matters, receives notices of intention to recall.
The recall election official must review the notice of intention within three business days,[6] and must either approve the notice, or send its sponsors a written statement indicating why it was not approved, thereby providing the sponsors with an opportunity to file a corrected notice of intention. N.J.S.A. 19:27A-7(a). Within five business days of approval, the recall election official shall serve the elected official sought to be recalled with a copy of the notice of intention, which contains an imprint of the Secretary's approval. N.J.S.A. 19:27A-7(a), (b). Within two weeks of approval, the Secretary shall submit the notice for publication in a newspaper within the jurisdiction of the elected official. N.J.S.A. 19:27A-7(b). The elected official may file an answer to the proposed recall. N.J.S.A. 19:27A-7(c).
Once the notice of intention is approved, the recall committee can begin the process of preparing a recall petition pursuant to N.J.S.A. 19:27A-8, which involves gathering the signatures of "at least 25% of the registered voters in the electoral district of the official sought to be recalled." N.J. Const. art. 1 ¶ 2b; see N.J.S.A. 19:27A-5. The parties agree that the number required for a United States Senator presently equates to approximately 1,300,000 registered voters. N.J.S.A. 19:27A-5. The signatures must be collected, and a completed petition submitted, within 320 days of approval for circulation by the Secretary of State. N.J.S.A. 19:27A-10(a)(1). If the completed petition is not filed within 320 days, it is deemed "void," N.J.S.A. 19:27A-10(b), and "[n]o part of a void petition shall be used in connection with any other recall effort." N.J.S.A. 19:27A-10(b).
Under the statute, if the requisite number of signatures is obtained and the petition is approved, the recall election is conducted either at the next general election, or at a special election if requested by the committee on the notice of intention. N.J.S.A. 19:27A-13(a)(2).[7] The statute requires that the ballot used at a recall election for a United States Senator appear as follows:
c. .... "Shall (insert name of elected official sought to be recalled) be recalled from the office of (insert title of office)?" To the right of the question, the words "Yes" and "No" shall appear and each voter shall indicate the voter's choice of one. A recall election sample ballot, but not the actual ballot, shall contain the statement of the reasons for the recall prepared by the recall committee and the answer thereto, if any, which appeared on the petition.

*1116 d. Whenever a successor is to be chosen at a recall election in the event the recall is successful, the ballot shall indicate: "Nominees for successor to [insert name and title of the elected official sought to be recalled] in the event he (or she) is recalled." The names of all persons nominated as successors shall appear immediately thereafter in such manner as will allow each voter to vote for one.
[N.J.S.A. 19:27A-15(c), (d).]
N.J.S.A. 19:27A-16(a) further provides:
If a majority of votes cast on the question of the recall of an elected official are in the affirmative, the term of office of the elected official shall terminate upon the certification of the election results. Where nominees to succeed the recalled official are voted on at the same election, the successor receiving the greatest number of votes shall succeed to the office of the recalled official upon certification of the election results and shall serve for the remainder of the unexpired term.
Plaintiff and amicus curiae contend that the recall should go forward without definitive resolution of the constitutional issue because that issue need not be addressed until, if ever, the Committee completes the task of gathering the signatures of registered voters, now approximated at 1,300,000, on a petition for the recall of Senator Menendez. Defendants and Senator Menendez, who the parties agree is an indispensable party, argue that the state laws are unconstitutional, and thus under the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, cl. 2, the Secretary of State properly refused to file the notice of intention. They also contend the issue is ripe for decision and the Secretary of State's decision should be upheld so that the time and resources of the State and its voters not be inappropriately consumed on an unconstitutional recall process.
It is true that our courts "do not address constitutional questions when a narrower, non-constitutional result is available." United States v. Scurry, 193 N.J. 492, 500 n. 4, 940 A.2d 1164 (2008). See also Abbott ex. rel. Abbott v. Burke, 199 N.J. 140, 234-35, 971 A.2d 989 (2009) (Master's report and recommendations) (courts should not anticipate questions of constitutional law when not necessary to do so); Randolph Town Ctr., L.P. v. County of Morris, 186 N.J. 78, 80, 891 A.2d 1202 (2006) ("[c]ourts should not reach a constitutional question unless its resolution is imperative to the disposition of litigation"); O'Keefe v. Passaic Valley Water Comm'n, 132 N.J. 234, 240, 624 A.2d 578 (1993) ("courts should not reach constitutional questions unless necessary to the disposition of litigation"). Moreover, "[j]usticiability concerns not only the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention." Renne v. Geary, 501 U.S. 312, 320, 111 S.Ct. 2331, 2338, 115 L.Ed.2d 288, 301 (1991). The basic rationale of the doctrine of ripeness "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements... [.]" Abbott Labs. v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, 691 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).
Therefore, courts will not decide claims that are "`contingent [upon] future events that may not occur as anticipated, or indeed may not occur at all.'" Hamdan v. Rumsfeld, 548 U.S. 557, 720, 126 S.Ct. 2749, 2847, 165 L.Ed.2d 723, 832 (2006) (quoting Texas v. United States, 523 U.S. 296, 300, 118 S.Ct. 1257, 1259, 140 L.Ed.2d 406, 411 (1998)) (internal quotation *1117 marks omitted and alteration in original). "[R]ipeness is peculiarly a question of timing." Anderson v. Green, 513 U.S. 557, 559, 115 S.Ct. 1059, 1060, 130 L.Ed.2d 1050, 1053 (1995) (quoting Reg'l Rail Reorganization Act Cases, 419 U.S. 102, 140, 95 S.Ct. 335, 357, 42 L.Ed.2d 320, 351 (1974)).
Quoting Justice Brandeis, Justice Breyer recently lauded the wisdom of the principles of judicial restraint:
[There is] older, wiser judicial counsel "not to pass on questions of constitutionality... unless such adjudication is unavoidable." Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944); see Ashwander v. TVA, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of"). In a sharp departure from this counsel, Saucier [v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the case being criticized by Justice Breyer] requires courts to embrace unnecessary constitutional questions not to avoid them.
[Scott v. Harris, 550 U.S. 372, 388, 127 S.Ct. 1769, 1780, 167 L.Ed.2d 686, 699 (2007) (Breyer, J., concurring) (emphasis added).]
We need not dwell on the procedural issue, particularly in light of our disposition. Suffice it to say that the court is disinclined to allow the process to go forward, and the citizens of this State to believe they are participating in a recall process, if it is certain that the court would have to decide, shortly thereafter, that the process was manifestly unconstitutional. Nor should the recall process be unduly delayed[8] if it is indeed constitutional. See, for example, Thorsted v. Gregoire, 841 F.Supp. 1068, 1074 (W.D.Wash.1994), aff'd sub nom. Thorsted v. Munro, 75 F.3d 454 (9th Cir.1996), in which the plaintiffs, registered voters in Washington, one of whom was Congressman Thomas Foley, alleged that a term limit initiative passed by the voters of that state was unconstitutional. The plaintiffs sought a declaratory judgment and an order enjoining the Secretary of State and Attorney General from enforcing the term limits law. Id. at 1071-72. In addressing the ripeness issue, the United States District Court found that:
The questions raised here are purely legal: whether a state may add qualifications for election to Congress beyond those listed in Article I, Sections 2 and 3; if not, whether Initiative 573 imposes further qualifications; and whether plaintiffs' rights under the First and Fourteenth Amendments are violated. The record is complete. The constitutional issues will not disappear, and to postpone deciding them would accomplish nothing.
[Id. at 1074.][9]
*1118 Even if a legal issue is technically "ripe," there can be institutional considerations of potential mootness and other factors that may nevertheless call for judicial restraint. See, e.g., Herbst Gaming, Inc. v. Heller, 122 Nev. 877, 141 P.3d 1224, 1230-31 (2006) (recognizing the benefit of allowing the electorate to vote on initiative even if later found unconstitutional, precluding pre-election review of the substantive provisions of an initiative); Hooper v. Hart, 56 F.R.D. 476 (W.D.Mich.1972) (dismissing complaint by two individuals seeking a declaratory judgment that United States Senators from Michigan were subject to recall under that state's law).[10] The court found in Hart that the complaint was "defective for its failure to demonstrate the existence of a justiciable case or actual controversy." Id. at 477.
As Hart exemplifies, no published opinion from any federal or state court in the nation has yet declared invalid a state recall measure's application to a member of the United States Senate or the House of Representatives. The grave and momentous consequences of invalidating a recall provision within the constitutional charter of a sovereign state, or an enactment by a State legislature, mandates that we similarly apply caution and restraint before striking down the New Jersey recall provisions before us, unless it is absolutely essential that we do so.
The critical question before us, therefore, is whether our State's constitutional and statutory recall measures, as applied to a United States Senator, are so manifestly invalid under the Federal Constitution that we must depart from the norms of judicial restraint and compel that the Committee's process in circulating a recall petition be halted. Cf. Romer v. Evans, 517 U.S. 620, 632, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855, 865 (1996) (provision of Colorado state constitution failed to survive even most lenient standard of review). For the reasons that we now explain, the recall measures approved by the citizens of New Jersey are not so clearly invalid under federal law as to require such a drastic, pre-emptive judicial declaration thwarting the will of the voters.

IV.
As already stated, the New Jersey Constitution and implementing statutory law authorize the recall of a United States Senator. N.J. Const. art. 1, ¶ 2; N.J.S.A. 19:27A-2. "[E]lection laws are to be liberally construed to the end that voters are permitted to exercise the franchise and that the will of the people as expressed through an election is heard." In re the Contest of the Nov. 8, 2005 Gen. Election for the Office of Mayor for the Twp. of Parsippany-Troy Hills, 192 N.J. 546, 559, 934 A.2d 607 (2007). The Legislature intended that the election laws "will be interpreted `to allow the greatest scope for public participation in *1119 the electoral process, to allow candidates to get on the ballot, to allow parties to put their candidates on the ballot, and most importantly to allow the voters a choice on Election Day.'" N.J. Democratic Party, Inc. v. Samson, 175 N.J. 178, 190, 814 A.2d 1028 (2002) (quoting Catania v. Haberle, 123 N.J. 438, 448, 588 A.2d 374 (1990)) (committee could select candidate to replace Senator Torricelli thirty-four days before election).
No cases in New Jersey have addressed the constitutionality of the recall election laws. In fact, only one case has cited the law, Comm. to Recall Casagrande v. Casagrande, 304 N.J.Super. 421, 422-423, 701 A.2d 439 (App.Div.1997), holding that under the statute, a recall election for a school board member could not be conducted within six months of the end of her term.
In a footnote to our opinion, we wrote that:
The Committee's counsel has expressly told us that the Committee is not challenging the constitutionality of the Uniform Recall Election Law, ... which is the legislative implementation of the constitutional amendment which authorizes the recall process.... We therefore have no occasion to address the constitutionality of any provision adopted by the Legislature in the implementation of the constitutional amendment... respecting the power to recall elected officials.
[Id. at 424 n. 1, 701 A.2d 439.]
Conversely, the United States Constitution has no express provision precluding the recall of United States Senators or Representatives, and "no Member [of Congress] has ever been recalled in the history of the United States." Jack Maskell, Recall of Legislators and the Removal of Members of Congress from Office, C.R.S. at 1 (2003).
The United States Constitution establishes that the term of office for a United States Senator is six years. U.S. Const. art. I, § 3, cl. 1; amend. XVII, ¶ 1. The Constitution also establishes the qualifications for office, that is, that a person must be at least thirty years old, a citizen of the United States for at least nine years, and an inhabitant of that State when elected. U.S. Const. art. I, § 3, cl. 3. These qualifications are exclusive and fixed, and neither Congress nor the States have the power to supplement them. United States Term Limits, Inc. v. Thornton, 514 U.S. 779, 827, 115 S.Ct. 1842, 1866, 131 L.Ed.2d 881, 915 (1995).
There are several reasons that appear to support the position of defendants that the recall provision is unconstitutional as it applies to United States Senators. As previously noted, article I, section 3, clause 1 and the Seventeenth Amendment of the United States Constitution each provide that the term is to be six years. There is no caveat or exception. Article I, section 5, clause 1 provides that Congress shall judge the qualifications of its own members, and article I, section 5, clause 2 provides a procedure for disciplining or expelling a Senator. Nothing is said about recall or any other method of removing a Senator. As a result, the United States Supreme Court has said that an involuntary vacancy in the Senate occurs only by death, expiration of office, or discipline such as expulsion. Burton v. United States, 202 U.S. 344, 369, 26 S.Ct. 688, 694, 50 L.Ed. 1057, 1066 (1906). And article I, section 3, clause 2 describes that Senators are placed into classes so that one-third of its members are elected every two years. Furthermore, article I, section 4 provides that the States may provide for the "Time, Places and Manner of holding elections for Senators" but, even then, Congress can preempt the subject. See also 2 U.S.C.A. § 1.
*1120 Thus, from what has been written and not provided in the Federal Constitution, one could reasonably conclude that the Constitution precludes the recall of a United States Senator. Significantly, historical evidence reveals that during the drafting and ratification process of the original Constitution efforts to include a recall provision were defeated.[11]Term Limits, supra, 514 U.S. at 810, 115 S.Ct. at 1858, 131 L.Ed.2d at 904-12; id. at 890, 115 S.Ct. at 1896, 131 L.Ed.2d at 953 (Thomas, J. dissenting).[12]
The Supreme Court also made clear in Term Limits that the Tenth Amendment provides no basis on which the States could act in this area because they possessed no powers to reserve at the time the Constitution was adopted. Id. at 799-800, 805, 115 S.Ct. at 1853, 1856, 131 L.Ed.2d at 897-98, 902 (majority opinion); id., 514 U.S. at 838, 115 S.Ct. at 1872, 131 L.Ed.2d at 921 (Kennedy, J., concurring). See also Cook v. Gralike, 531 U.S. 510, 522, 121 S.Ct. 1029, 1037, 149 L Ed.2d 44, 50, 55-56 (2001); Maskell, supra, C.R.S. at 1.
Nonetheless, we can find no case or precedent which addresses the issue before us or precludes recall under the Seventeenth Amendment.[13] Moreover, there is no federal constitutional provision which precludes States from adopting legislation which relates to neither the place, time and manner of election, provided it is not inconsistent with the provisions of the Constitution. See Foster v. Love, 522 U.S. 67, 69, 118 S.Ct. 464, 466, 139 L.Ed.2d 369, 373 (1997).[14]
Significantly, the Term Limits opinion repeated and emphasized its precedent that the Constitution was designed so that "`the people should choose whom they please to govern them.'" Term Limits, supra, 514 U.S. at 819, 115 S.Ct. at 1862, 131 L.Ed.2d at 910 (quoting Powell v. McCormack, 395 U.S. 486, 547, 89 S.Ct. 1944, 1977, 23 L.Ed.2d 491, 531 (1969)). At the very outset of the Term Limits opinion the Court noted that the State-imposed *1121 restrictions on the ability to serve in Congress were "contrary to the `fundamental principle of our representative democracy.'" Id. at 783, 115 S.Ct. at 1845, 131 L.Ed.2d at 888 (quoting Powell, supra, 395 U.S. at 547, 89 S.Ct. at 1977, 23 L.Ed.2d at 531). Term Limits also made clear that State-imposed restrictions were found to "undermine the second critical idea recognized in Powell: that an aspect of sovereignty is the right of the people to vote for whom they wish," id. at 820, 115 S.Ct. at 1863, 131 L.Ed.2d at 911, and that it is basic that "the right to choose representatives belongs not to the States but to the people." Id. at 820-21, 115 S.Ct. at 1863, 131 L.Ed.2d at 911. Term Limits dealt with a qualifications clause issue and held that "a state amendment is unconstitutional when it has the likely effect of handicapping a class of candidates and has the sole purpose of creating additional qualifications indirectly." Id. at 836, 115 S.Ct. at 1870-71, 131 L.Ed.2d at 920.
This case deals with neither the qualifications clause nor with handicapping the electorate or its choice; even a recalled Senator could run for reelection. And in the Term Limits dissent, dealing with the qualifications clause, four members of the Court agreed that "[t]he Constitution is simply silent on this question [a]nd where the Constitution is silent, it raises no bar to action by the States or the people." Id. at 845, 115 S.Ct. at 1875, 131 L.Ed.2d at 926. The dissent emphasized that the majority decision is based on the fundamental "right of the people to choose whom they please to govern them" although the dissent believed the majority did not properly apply the principle. Id. at 845, 115 S.Ct. at 1875, 131 L.Ed.2d at 926 (internal quotation marks and citations omitted).
In sum, there are a host of genuine arguments and counter-arguments that can be articulated and debated about whether or not the Federal Constitution would permit a United States Senator to be recalled by the voters under state law. There is no express textual answer to this debate in the United States Constitution. Nor is there any precedent from the United States Supreme Court squarely on point. The briefs and arguments in this appeal do not convince us that we can safely predict what the United States Supreme Court would do if it were presented with the issue. Although many commentators have suggested that such recall measures are, in fact, invalid, such analyses involve debate about the true meaning and intent of the Framers.
Against this backdrop of uncertainty about the pre-emptive contours of the Federal Constitution, we must also consider the fundamental significance of our State's own constitutional charter, and the overwhelming majority of voters who approved the recall measure in 1993. We live in a State that has a rich tradition, particularly since our modern State Constitution was adopted in 1947, of recognizing individual rights that often go beyond the bare minimums conferred by the Federal Constitution. Time and time again, our courts have identified and enforced rights of the people of our State that emanate from our own constitution and that are not embodied, or guaranteed to the same degree, in the United States Constitution. See, e.g., State v. Hunt, 91 N.J. 338, 345-46, 450 A.2d 952 (1982); State v. Novembrino, 105 N.J. 95, 144-45, 519 A.2d 820 (1987); Stewart G. Pollock, Address: State Constitutions as Separate Sources of Fundamental Rights, 35 Rutgers L.Rev. 707, 708 (1983). Typically, such issues have arisen in the contexts where the New Jersey Constitution confers greater protection than cognate rights in the Federal Constitution, rather than a case such as this one involving structural provisions of the respective Constitutions. Even so, we *1122 do not treat lightly defendants' request that we declare the words of our State Constitution to be irreconcilably in conflict with federal law, and absent clear precedent that compels such a declaration, we are loathe to strike down a component of our State's charter that fortifies the democratic role of our citizens. In short, our State Constitution, and the democratic process that produced it, deserves our utmost respect unless federal law clearly and definitively trumps it.
Given the will of the people embodied in our State organic law, and the dearth of clear precedent nullifying the people's enactments, we accordingly decline at this juncture to find our State constitutional provision and related statute permitting recall of a United States Senator to be unconstitutional. We, as an intermediate appellate court, like the Secretary of State, are sworn to uphold the State Constitution as well the federal, and we have a duty to endeavor to reconcile the provisions of the Constitutions so long as we also recognize the Supreme Law of the Land. See Jackman v. Bodine, 43 N.J. 453, 457, 468-71, 205 A.2d 713 (1964). See also McNeil v. Legislative Apportionment Comm'n, 177 N.J. 364, 388, 828 A.2d 840 (2003), cert. denied, 540 U.S. 1107, 124 S.Ct. 1068, 157 L.Ed.2d 893 (2004); A.A. v. State, 384 N.J.Super. 481, 484, 895 A.2d 453 (App.Div.), certif. denied, 188 N.J. 346, 907 A.2d 1007 (2006), cert. denied, 549 U.S. 1181, 127 S.Ct. 1169, 166 L.Ed.2d 996 (2007). We are pointed to no precedential opinion which has held that the recall of a United States Senator cannot be conducted. The silence of the federal Constitution may well result in the conclusion that it may be done. Term Limits, supra, 514 U.S. at 845, 115 S.Ct. at 1875, 131 L.Ed.2d at 926 (Thomas, J., dissenting). In the absence of such a federal provision on the subject, one way or the other, we presently decline to so hold, particularly because we now dealt with, among other things, novel issues under the Seventeenth Amendment.
Both Term Limits, supra, and Powell, supra, deal with constitutional provisions regarding qualifications that were enacted before the Seventeenth Amendment was adopted,[15] and significantly, Term Limits dealt with neither a recall issue nor the Seventeenth Amendment.
The Seventeenth Amendment, which was ratified in 1913, provides for direct election of Senators "by the people" with qualifications of "electors of the most numerous branch of the State legislatures." The Amendment eliminated the election of United States Senators "chosen by the Legislature" of each State. U.S. Const. art. I, § 3, cl. 1. As a result, the ability of the State Legislature to control its United States Senator, a subject of concern to the Framers in 1789, was eliminated. See Trinsey v. Pennsylvania, 941 F.2d 224, 228-29 (3d Cir.), cert. denied, 502 U.S. 1014, 112 S.Ct. 658, 116 L.Ed.2d 750 (1991). The people formally "gained unmediated control over their Senators," but in practice the potential of instructing them became more remote. Jay S. Bybee, Ulysses at the Mast: Democracy, Federalism and the Sirens' Song of the Seventeenth Amendment, 91 N.W. U.L.Rev. 500, 568 (1997). It has been stated that "[a]s the *1123 Constitution does not bar the people of the states the power to recall their federal legislators, they should be free to exercise that power." Timothy Zick, The Consent of the Governed: Recall of United States Senators, 103 Dick. L.Rev., 567, 589 (1999).
To summarize, we neither declare the recall provision in our State Constitution as applied to a United States Senator definitively valid or invalid. There is, and there will be, no necessity for our courts to resolve this difficult constitutional issue if the Committee's petition drive fails to collect the necessary, approximately, 1,300,000 signatures. Pending that possible eventuality, we see no urgent reason to now decide the question of invalidity or validity with finality. All we need to decide, as we have done, is whether there is a sufficient basis for the Committee to proceed with its initiative and for the Secretary of State to perform her ministerial function. To go beyond that limited holding and "embrace unnecessary constitutional questions" would depart from the "older, wiser counsel" of judicial restraint. Scott, supra, 550 U.S. at 388, 127 S.Ct. at 1780, 167 L.Ed.2d at 699.

V.
Because of the position of the parties, the constitutionality of our Uniform Recall Election Law has not been considered in light of article I, section 4, clause 1, providing Congress the power to "make or alter" State law concerning "[t]he Times, Places and Manner of holding Elections for Senators and Representatives." See Foster, supra, 522 U.S. at 68, 118 S.Ct. at 466, 139 L.Ed.2d at 373, and its implementing statute, 2 U.S.C.A. § 1. However, the Seventeenth Amendment provides in relevant part:
When vacancies happen in the representation of any State in the Senate, the executive authority of such State shall issue writs of election to fill such vacancies: Provided, that the legislature of any State may empower the executive thereof to make temporary appointments until the people fill the vacancies by election as the legislature may direct.[16]
Assuming that a vacancy can be created by a recall election, it is not asserted that the time and manner of filling the vacancy, as embodied in the Uniform Recall Election Law, see N.J.S.A. 52:27A-6, -16, is unconstitutional. If any such challenge is raised it can be addressed at an appropriate time, and if needed we can consider performing such "judicial surgery" as may be necessary to maintain the will of the people of New Jersey to have the power of recall. See, e.g., State v. Fortin, 198 N.J. 619, 630, 969 A.2d 1133 (2009); State v. Natale, 184 N.J. 458, 485-86, 878 A.2d 724 (2005) (permitting judicial surgery of a statute to maintain its constitutionality with the demand of the federal Constitution).

VI.
We consequently order the current Secretary of State to accept and file the petition, and to proceed under the statute. In so ordering that ministerial act, we should not be understood as passing on the ultimate validity of the recall process regarding a United States Senator or any other underlying issue. However, as we have addressed a substantial constitutional issue, we stay our decision until such time as the defendants or Senator Menendez files a notice of appeal, or petition for certification, within the time required by the Rules, in which instance the stay shall remain in effect until the Supreme Court *1124 acts. See R. 2:2-1(a)(1), (b); 2:4-1(a); 2:12-3; 2:12-9.
NOTES
[1] Lieutenant Governor Kim Guadagno was elected on November 2, 2009, and sworn in as Secretary of State on January 19, 2010.
[2] Defendants do not contend that the notice was in any way deficient.
[3] We need not discuss the delay in processing and responding to the petition or the action in lieu of prerogative writ designed to compel its acceptance. That action was dismissed when the final administrative determination was rendered.
[4] The legal advice of the Attorney General to her client, the Secretary of State, is privileged and not subject to disclosure under the Open Public Records Law, except for rare instances in which the Attorney General elects, with the consent of the client, to release a Formal Opinion for public consumption. See Paff v. Div. of Law, 412 N.J.Super. 140, 988 A.2d 1239 (App.Div.2010). In any event, we need not have disclosure of whatever confidential communication the Attorney General made to the Secretary of State because the Attorney General's legal position as to the validity of the recall provision has been set forth in the Attorney General's brief and argument on this appeal.
[5] 1,328,657 votes were cast in favor of the amendment providing for the recall of elected officials, and only 414,925 votes were cast against it. Public Question No. 1 (ballot question tally) (1993).
[6] As we have already noted, the lapse of time in the Secretary responding to plaintiff's petition beyond the normal three-day review period under the statute was explained by defendants as attributable to the legal analysis of the validity of the petition and, implicitly, consideration of the novel issues of constitutional law that it implicated.
[7] There are some caveats and exceptions in the statute not relevant to this opinion. Id.
[8] If the petition went forward and garnered the necessary signatures, the ballot would need to be certified by September 9, 2010, fifty-five days before the next general election on November 2, 2010. N.J.S.A. 19:27A-13(a)(2). We note that the Committee started the recall process late, and even if the Secretary had approved its petition within three days, the Committee would not have been able to take full advantage of the maximum time under the statute for circulating a petition and for completing the other necessary steps to get a qualified recall question on the ballot in time for the general election on November 2, 2010.
[9] The Ninth Circuit summarily upheld the finding of unconstitutionality based on the intervening opinion in U.S. Term Limits, Inc. v. Thornton, 514 U.S. 779, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995). Thorsted v. Munro, supra, 75 F.3d at 456.
[10] Plaintiff insists that we need not address the constitutional validity issue because the First Amendment and its New Jersey counterparts require the recall process to go forward even if the end result cannot be achieved. Stated differently, plaintiff asserts that, particularly, in light of the value New Jersey's Constitution places on recall, our State Constitution protects the petition activity itself. The Committee, thus, tries to avoid a contest on one constitutional issue by asserting another constitutional right, albeit one that does not implicate the striking down of a constitutional provision. But, in the absence of citation to more specific constitutional authority, we see no basis on which we can permit the right to require a process, if it is manifestly unconstitutional, to proceed. There would clearly be a First Amendment right to advocate amendment of the recall statute or the Constitution itself. Accordingly, we have to at least consider, if not resolve, the substance of the underlying claim as plaintiff wants the process to go forward.
[11] It has also been said that the recall of Members of Congress was considered during the time of the drafting of the Federal Constitution in 1787, but no such provisions were included in the final version sent to the States for ratification, and the specific drafting and ratifying debates indicate an express "understanding of the Framers and ratifiers that no right or power to recall a Senator or Representative from the United States Congress" exists under the Constitution. Maskell, supra, C.R.S. at 6.
[12] With respect to the question of Congressional salaries as they impacted on the question of term limits, in a footnote the Term Limits majority states: "The Framers' decision to reject a proposal allowing for States to recall their own representatives, . . . reflects these same concerns" which led to the national government paying salaries of Congressmen and Senators to eliminate undue influence by the States. Id. at 810 n. 20, 115 S.Ct. at 1858 n. 20, 131 L.Ed.2d at 904 n. 20 (citation omitted). We decline to read this passing historic reference relating to the original Constitution, when no discussion was necessary or relevant with respect to the Seventeenth Amendment, to be the basis on which the validity of the Constitution of New Jersey shall turn.
[13] During the debate on the Seventeenth Amendment, at least one Senator advocated "[t]he right of recall" in some form. 45 Cong. Rec. 7125 (1910). However, the subject was not specifically addressed or included in the text of the Seventeenth Amendment. See Jays Bybee, Ulysses At the Mast: Democracy, Federalism and the Sirens' Song of the Seventeenth Amendment, 91 N.W. U.L.Rev. 500, 558 (1997).
[14] This issue does not appear to be procedural or deal with the "time, place [or] manner of elections." See Term Limits, supra, 514 U.S. at 832-25, 115 S.Ct. at 1869-70, 131 L.Ed.2d at 917-20 (majority opinion); id., 514 U.S. at 862-65, 115 S.Ct. at 1883-84, 131 L.Ed.2d at 936-38 (Thomas, J. Dissenting).
[15] Term Limits dealt with the qualification clauses, article I, section 2, clause 2 regarding the House of Representatives and article I, section 3, clause 3 regarding Senators. The Court stated that "the available historical and textual evidence, read in light of the basic principles of democracy underlying the Constitution and recognized . . . in Powell reveal the Framers' intent that neither Congress nor the States should possess the power to supplement the exclusive qualifications set forth in the text of the Constitution." Term Limits, supra, 514 U.S. at 827, 115 S.Ct. at 1866, 131 L.Ed.2d at 914-15.
[16] This replaced a portion of U.S. Const. art. I, § 3, cl. 2.