2010 ND 250

**RECALLND, Petitioner**

v.

**Alvin JAEGER, Secretary of State for North Dakota, Respondent.**

No. 20100228.

Supreme Court of North Dakota.

Dec. 21, 2010.

Jeffrey L. Sheets (on brief), Minot, N.D., and Andrew L. Schlafly (argued), Far Hills, N.J., for petitioner.

Douglas A. Bahr, Solicitor General, Office of Attorney General, Bismarck, N.D., for respondent.

Charles D. Jacobson, Minot, N.D., and Peter Ferrara, Easton, PA, for amicus cu-

riae American Civil Rights Union; submitted on brief.

SANDSTROM, Justice.

[¶ 1] The right to recall their elected officials is an important liberty reserved by the people of North Dakota. The people have reserved this power over their elected officials through the state constitution. Within the state constitution, however, the people of North Dakota have limited their recall power to certain offices created under state law.

[¶ 2] RECALLND, a North Dakota nonprofit corporation, asks this Court to order Secretary of State Alvin Jaeger to approve for circulation its petition to recall United States Senator Kent Conrad. Sections 1 and 10, N.D. Const. art. III, provide that only certain elected officials may be recalled by the people of North Dakota. The Secretary of State concluded a United States Senator is not among those officials subject to recall. Although Senator Conrad has been elected by the voters of North Dakota, the office of United States Senator is created by the Constitution of the United States, not the Constitution of the State of North Dakota. The recall of a United States Senator elected from North Dakota would need to be both authorized by the Constitution of the State of North Dakota and permitted by the Constitution of the United States. Because the recall of a United States Senator is not authorized by North Dakota's Constitution, we need not decide the federal constitutional question. We deny RECALLND's request to order the Secretary of State to approve its petition for the recall of United States Senator Kent Conrad.

I

[¶ 3] RECALLND founder Joseph Wells delivered a letter and a petition form for the recall of United States Senator Kent Conrad to the Secretary of State in May 2010. His letter stated the petition form was a "first draft" and asked the Secretary of State to notify him of any changes that needed to be made. Ten days after Wells's letter and petition form were received by the Secretary of State, Attorney General Wayne Stenehjem issued an opinion concluding North Dakota law does not permit the recall of a congressional official, specifically a United States Senator. The Attorney General relied on N.D. Const. art. III, § 10, which he believes restricts the recall process to state government officials and other public offices created under the laws of North Dakota.

[¶ 4] Relying on the Attorney General's opinion, the Secretary of State informed Wells that he did not have the authority to approve RECALLND's petition for circulation. RECALLND now asks this Court to order the Secretary of State to approve its petition to begin the recall of United States Senator Kent Conrad.

II

[¶ 5] RECALLND contends we must exercise original jurisdiction in this matter because sections 6 and 7, N.D. Const. art. III, confer mandatory original jurisdiction over all decisions of the Secretary of State regarding petitions. The Secretary of State argues sections 6 and 7 apply only to initiative and referendum petitions, not to recall petitions. He does submit, however, that it is appropriate for this Court to decide this case by exercising discretionary jurisdiction under N.D.C.C. § 27–02–04.

[¶ 6] Section 5 has provisions dealing with the specific procedures regarding initiative and referendum petitions, but does not mention recall petitions. Section 6 uses the phrase "such petition" to refer to

the petitions delineated in section 5. Section 7 outlines the process of reviewing the Secretary of State's decisions made under the guidelines of section 6. Taken together, the amendment's language shows that sections 6 and 7 apply exclusively to initiative and referendum petitions. Not once is the recall process mentioned or referred to in sections 2 through 9. Accordingly, sections 6 and 7, N.D. Const. art. III, do not govern recall petitions.

 [¶ 7] RECALLND seeks a writ of mandamus under N.D.C.C. § 32–34–01 compelling the Secretary of State to approve its petition for circulation. This Court has the power to issue original writs under N.D. Const. art. VI, § 2. The exercise of this power is left to this Court's discretion and cannot be invoked as a matter of right. *Bolinske v. Jaeger*, 2008 ND 180, ¶ 4, 756 N.W.2d 336. "It is well-settled that our power to exercise original jurisdiction extends only to those cases in which the questions presented ... affect the sovereignty of the state, the franchises or prerogatives of the state, or the liberties of its people." *Kelsh v. Jaeger*, 2002 ND 53, ¶ 2, 641 N.W.2d 100; *see also* N.D.C.C. § 27–02–04. We exercise original jurisdiction in this case because the State has a primary interest in the outcome and the sovereign rights of its citizens are affected.

### III

 [¶ 8] This case requires us to construe the various sections of N.D. Const. art. III. Principles of statutory construction generally apply to construction of the constitution. *Thompson v. Jaeger*, 2010 ND 174, ¶ 7, 788 N.W.2d 586. The principles for construing constitutional provisions were expressed in *Kelsh v. Jaeger*, 2002 ND 53, ¶ 7, 641 N.W.2d 100:

When interpreting the state constitution, our overriding objective is to give effect to the intent and purpose of the people adopting the constitutional statement. *City of Bismarck v. Fettig*, 1999 ND 193, ¶ 8, 601 N.W.2d 247. The intent and purpose of a constitutional provision is to be determined, if possible, from the language itself. *State ex rel. Heitkamp v. Hagerty*, 1998 ND 122, ¶ 13, 580 N.W.2d 139. We give words in a constitutional provision their plain, ordinary, and commonly understood meaning. *Tormaschy v. Hjelle*, 210 N.W.2d 100, 102 (N.D.1973). When interpreting constitutional provisions, we apply general principles of statutory construction. *Hagerty*, at ¶ 13. We must give effect and meaning to every provision and reconcile, if possible, apparently inconsistent provisions. *State ex rel. Sanstead v. Freed*, 251 N.W.2d 898, 908 (N.D. 1977). We presume the people do not intend absurd or ludicrous results in adopting constitutional provisions, and we therefore construe such provisions to avoid those results. *North Dakota Comm'n on Med. Competency v. Racek*, 527 N.W.2d 262, 266 (N.D.1995).

### A

[¶ 9] RECALLND argues the constitutions of North Dakota and the United States of America allow for the recall of a United States Senator, and therefore its petition should be approved.

[¶ 10] The office of United States Senator was created by Article I, Section 3 of the Constitution of the United States, and under the Seventeenth Amendment each Senator is "elected by the people" of the state "for six years." Article I, Section 3 of the United States Constitution reflects the framers' decision that qualifications to serve as United States Senator should be uniform throughout the nation. *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 837, 115 S.Ct. 1842, 131 L.Ed.2d 881

(1995). "Members of Congress are chosen by separate constituencies, but ... they become, when elected, servants of the people of the United States. They are not merely delegates appointed by separate, sovereign States; they occupy offices that are integral and essential components of a single National Government." *Id.* at 837–38, 115 S.Ct. 1842.

[¶ 11] The power of North Dakota's citizens to recall their elected officials comes solely from N.D. Const. art. III, §§ 1 and 10. Section 10 defines the scope of the power and specifies the "certain elected officials" subject to recall:

> Any elected official of the state, of any county or of any legislative or county commissioner district shall be subject to recall by petition of electors equal in number to twenty-five percent of those who voted at the preceding general election for the office of governor in the state, county, or district in which the official is to be recalled.

> The petition shall be filed with the official with whom a petition for nomination to the office in question is filed, who shall call a special election if he finds the petition valid and sufficient. No elector may remove his name from a recall petition.

Absent from section 10 is any reference to North Dakota's congressional officials, including a United States Senator. Under the plain language of this section, elected officials in state and county positions are subject to recall. Congressional officials, however, are not mentioned.

[¶ 12] RECALLND nevertheless argues that North Dakota's congressional delegation is included in N.D. Const. art. III, § 10. It contends the word "district" is modified by the terms preceding it—"state," "county," "legislative," and "county commissioner." Therefore, it argues section 10 should be read to state, "Any elect-

ed official who is elected by the people of the state ... district" is subject to recall. Alternatively, RECALLND argues section 10 should be read to state, "Any elected official of ... any legislative ... district" may be recalled, and a United States Senator is elected by the legislative district of North Dakota.

■ [¶ 13] RECALLND's first construction of N.D. Const. art. III, § 10, is untenable because it adds words not in the state constitution. The phrase "who is elected by the people" is not found in section 10, and implicitly including this phrase fundamentally changes the section's interpretation. We must interpret what is actually contained in the Constitution, not what the parties would prefer it contained. *See Bulman v. Hulstrand Constr. Co., Inc.,* 521 N.W.2d 632, 636 (N.D.1994) ("The intent and purpose of a constitutional provision is to be determined, if possible, from the language itself.")

[¶ 14] We look for resolution under the actual language of N.D. Const. art. III, § 10. The inclusion of the comma after "state" indicates the beginning of a separate clause. *State ex rel. Stenehjem v. FreeEats.com, Inc.,* 2006 ND 84, ¶ 14, 712 N.W.2d 828. Accordingly, the word "district" is not modified by the word "state." The proper construction of section 10 reads, "Any elected official of the state ... shall be subject to recall...." This construction reinforces the Secretary of State's conclusion. A United States Senator is not a state official, but rather is a federal official elected by the state constituency. *Thornton,* 514 U.S. at 837–38, 115 S.Ct. 1842.

[¶ 15] Even if RECALLND's alternative construction of N.D. Const. art. III, § 10, were correct, it still would not authorize the recall of a United States Sena-

tor. The terms "legislative" and "congressional" are not synonymous. At the time the people of North Dakota voted on the current recall provisions, the Constitution treated "congressional" and "legislative" distinctly:

> The qualified electors of the state or of any county, or of any congressional, judicial or legislative district may petition for the recall [of] any elective congressional, state, county, judicial or legislative officer by filing a petition with the officer with whom the petition for nomination to such office in the primary election is filed, demanding the recall of such officer.

N.D. Const. art. 33 (1919).

[¶ 16] For nearly sixty years, North Dakota's recall provision identified congressional and legislative districts as distinct. "Congressional" refers to the United States Congress, and "legislative" refers to the North Dakota Legislature. While North Dakota previously had more than one congressional district, the fact that it now has only one such district does not make congressional and legislative districts equivalent.

■ [¶ 17] The references to congressional districts and officers, present in the recall provision from its enactment in 1919, have been removed. A material change in the original law is presumed to indicate an intent to change the law. *Walker v. Weilenman*, 143 N.W.2d 689, 694 (N.D.1966). The removal of all references to "congressional officers" in North Dakota's recall provision was a material change that diminished the scope of the people's recall power.

[¶ 18] The purpose for removing this language can be gathered by looking at the 1972 Constitutional Convention. The current recall provision was enacted in 1978 to replace article 33, and is essentially the same provision that was proposed but rejected after the 1972 Constitutional Convention. The recall provision introduced at the Convention was proposed Article XVI, Section 8, stating in part:

> Any elected non-judicial officer of this state, or of any county or any legislative or commissioner district shall be subject to recall upon petition of electors equal in number to twenty-five percent of those who voted at the preceding general election for the office of governor in the state, county or district in which such officer is to be recalled.
>
> The petition shall be filed with the officer with whom a petition for nomination to the office in question is filed, which officer shall call a special election if he finds the petition numerically sufficient. No elector may remove his name from a recall petition.

II *Debates of the North Dakota Constitutional Convention* 1138 (1972).

[¶ 19] The history of the 1972 Constitutional Convention reflects an intention to remove congressional officials from the reach of the people's recall power. Delegate Alvin Berg of the Legislative Functions Committee described to the delegation why certain changes were being proposed to the constitution's recall provision: "If you will note, we repealed Article 33 of the amendments to our old Constitution, and we created Section 8 of Article XVI as follows: You will notice the similarity between the sections—between the section and Article 33 are apparent, but we make no reference to congressional offices. . . ." II *Debates of the North Dakota Constitutional Convention* 1138 (1972). The interim report of the Legislative Functions Committee explained in further depth the reasoning behind the removal of congressional officers from the recall provision:

Similarities between this section and article 33 of the amendments are apparent; but unlike the existing article, the proposed section makes no reference to Congressional officers. This change came about in recognition of the fact that the people of a particular state have no authority to dictate to the United States Congress the qualifications of its members.

*Interim Report of North Dakota Constitutional Convention* 82 (1972). This history reinforces the conclusion that the "congressional" references in the recall provision were removed to exclude North Dakota's congressional officials from the recall power.

[¶ 20] To support its position, RECALLND offers two decisions of other states that upheld a state's power to recall a congressional official. The first is an opinion from the Wisconsin Attorney General concluding a United States Senator could be recalled under Wisconsin law. Wis. Op. Att'y Gen. 54–79, 1979 WL 42031. In contrast to the North Dakota Constitution, the Wisconsin Constitution provides for the recall of a United States Senator. Wis. Const. art. XIII, § 12 ("The qualified electors of the state, of any *congressional,* judicial or legislative district or of any county may petition for the recall of *any incumbent elective officer* ....") (emphasis added). In the absence of such state authority, other attorneys general have reached the same conclusion as Attorney General Stenehjem, that congressional officials are not subject to state recall. *See* La. Att'y Gen. Op. 09–0051; 1978 Nev. Op. Att'y Gen. 14; Kan. Att'y Gen. Op. No. 94–35. The Wisconsin Attorney General's opinion offers little guidance in this case, because the people of North Dakota removed from their constitution the references to congressional officials still present in the Wisconsin Constitution.

[¶ 21] The other decision relied on by RECALLND is *Committee to Recall Robert Menendez from the Office of U.S. Senator v. Wells,* 413 N.J.Super. 435, 995 A.2d 1109 (2010). In that case, the New Jersey Superior Court also upheld the right to recall a United States Senator on the basis of state constitutional authority. *Id.* Since our case here in North Dakota was argued, the New Jersey Supreme Court reversed the Superior Court and ruled that New Jersey's recall provision is unconstitutional as to congressional officials. *Committee to Recall Robert Menendez from the Office of U.S. Senator v. Wells,* 204 N.J. 79, 7 A.3d 720 (2010). The New Jersey Supreme Court concluded the recall of a United States Senator is not allowed under the United States Constitution, a question we do not reach, because such a recall is not permitted under the North Dakota Constitution.

[¶ 22] The people of North Dakota have reserved the power to recall their elected officials, but have expressly limited that power to certain offices. Section 1, N.D. Const. art. III., restricts the recall process to "certain elected officials" which do not include congressional officials under N.D. Const. art. III, § 10. The plain language of section 10 is devoid of any reference to congressional officials or their districts. Further, the original recall provision contained such references, and subsequent legislative history explains why they were purposefully removed. Sections 1 and 10, N.D. Const. art. III, do not permit the recall of North Dakota's congressional delegation.

B

■ [¶ 23] RECALLND argues the Secretary of State exceeded his authority by rejecting the petition on the basis of its illegality. It contends the Secretary of State is authorized to evaluate a petition

only for form under N.D. Const. art. III, § 2, which states in part:

> A *petition to initiate or to refer a measure* must be presented to the secretary of state for approval as to form. A request for approval must be presented over the names and signatures of twenty-five or more electors as sponsors, one of whom must be designated as chairman of the sponsoring committee. The secretary of state shall approve the petition for circulation if it is in proper form and contains the names and addresses of the sponsors and the full text of the measure.

(Emphasis added.) As the emphasized language indicates, this section deals solely with the initiative and referendum processes. If N.D. Const. art. III, § 2, were intended to govern recall petitions, the drafters would have listed recall along with referendum and initiative petitions. *See Sanderson v. Walsh County*, 2006 ND 83, ¶ 16, 712 N.W.2d 842 ("[T]he law is what is said, not what is unsaid, and the mention of one thing implies exclusion of another.").

[¶ 24] Sections 1 and 10, N.D. Const. art. III, address the recall process and control its function in the state. Section 10 directs a petition for recall to be filed "with the official with whom a petition for nomination to the office in question is filed." This official is the Secretary of State under N.D.C.C. § 16.1–11–06. Unlike section 2, section 10 does not restrict the Secretary of State's authority in reviewing a petition to its form.

[¶ 25] In the absence of such restrictive language, the Secretary of State declined to approve RECALLND's petition. We have noted previously the lack of specificity regarding the Secretary of State's duties under N.D. Const. art. III: "[T]he Constitution places upon the Secretary of State the duty of determining . . . whether the petitions conform to the requirements of the Constitution and the laws of this State. In the discharge of such responsibility placed upon him, the Secretary of State must exercise a certain amount of discretion." *Hernett v. Meier*, 173 N.W.2d 907, 918 (N.D.1970). When uncertain about a legal question, it was appropriate for the Secretary of State to rely on the Attorney General's opinion in deciding whether to accept or reject RECALLND's petition. *See State ex rel. Johnson v. Baker*, 74 N.D. 244, 21 N.W.2d 355, 357 Syllabus ¶ 5 (1945) ("[W]hen a state officer is in doubt as to the constitutionality of a statute, under the terms of which he is called upon to perform a ministerial act, it is his duty to consult with and procure the opinion of the attorney general with respect to the matter and be guided in his action by that opinion until it is superseded by judicial decision.") Nothing in N.D. Const. art. III, § 10, compels the Secretary of State to approve a petition solely on the basis of its form when its purpose cannot be accomplished under North Dakota law.

[¶ 26] As with the power to recall, we have noted the initiative and referendum provisions were fought for by the people. *McCarney v. Meier*, 286 N.W.2d 780, 785 (N.D.1979). Accordingly, these provisions are entitled to a broad and liberal construction. *Id.* Despite this broad deference, it is "absolutely necessary" for a petition to meet constitutional requirements. *See id.* at 786. The constitution requires, under N.D. Const. art. III, §§ 1 and 10, that a recall petition must be directed at "certain elected officials" who derive their power under state law. RECALLND's petition attempts to recall a United States Senator, an official not included in section 10. RECALLND's petition does not meet the constitutional requirements of a valid recall petition. The Secretary of State exercised appropriate and reasonable authority by denying RE-

CALLND's petition before it was circulated to the public.

## IV

[¶ 27] Congressional officials, including a United States Senator, are not subject to recall under the North Dakota Constitution. The Secretary of State acted appropriately in denying RECALLND's petition for circulation on this basis. We deny RECALLND's request to order the Secretary of State to approve its petition for circulation.

[¶ 28] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS and MARY MUEHLEN MARING, JJ., THOMAS J. SCHNEIDER, D.J., concur.

[¶ 29] The Honorable THOMAS J. SCHNEIDER, D.J., sitting in place of KAPSNER, J., disqualified.